LEVETT (WHIPPLE v.). See Case No. 17,-518.

LEVI (FOXALL v.). See Case No. 5,015.

LEVI v. HOME MUT. INS. CO. See Case No. 8,290.

## Case No. 8,289.

LEVI et al. v. NATIONAL BANK OF MISSOURI.

[5 Dill. 104;[1] 7 Cent. Law J. 249; 7 Am. Law Rec. 283.]

Circuit Court, E. D. Missouri. Sept. Term, 1878.

BANK AS COLLECTING AGENT—PAYMENT BY CHECK.—CERTIFICATION OF CHECK — FAILURE OF COLLECTING BANK—RIGHT TO COLLECT AND CREDIT AFTER SUSPENSION.

1. A bank, acting as the collecting agent of another bank, has, in the absence of special authority or usage, no right to receive in payment anything but money; if it receives the check of the debtor on another bank, this is conditional payment only, and it becomes the agent of the drawer of the check to receive the money thereon, and until the money is received the payment is not complete.

2. The defendant bank received from the plaintiffs, their correspondent, a bill of exchange "for collection and credit," and accepted from the drawee his check on a third bank for the amount, and surrendered the bill of exchange. On presenting the check, instead of demanding the money thereon, it accepted its certification as good, and suspended the same day, having previously credited the plaintiffs with the amount. On the day after its suspension it collected the certified

1 [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

check. A receiver having been appointed, the amount. mingled with other moneys. came into his hands. The question was, whether the defendant bank was a general debtor to the plaintiffs for the amount, or whether the money received on the check was held by the receiver in trust for them; and judgment of the court was for the plaintiffs.

[Cited in Re Armstrong, 33 Fed. 408; First Nat. Bank v. Bank of Monroe, Id. 412; Fifth Nat. Bank v. Armstrong, 40 Fed. 48, 49; First Nat. Bank v. Armstrong, 42 Fed. 197. Cited, but not followed, in Franklin Co. Nat. Bank v. Beal, 49 Fed. 608.]

[Cited in Jones v. Kilbreth, 49 Ohio St. 411, 31 N. E. 349; Re Assignment of State Bank (Minn.) 57 N. W. 337; First Nat. Bank of Crown Point v. First Nat. Bank of Richmond, 76 Ind. 568. Distinguished in Ayres v. Farmers' & Merchants' Bank, 79 Mo. 425. Cited in Manufacturers' Nat. Bank v. Continental Bank, 148 Mass. 558, 20 N. E. 193.]

This is a suit in equity, wherein the plaintiffs seek to recover from the defendant a certain sum of money which they allege the receiver of the defendant—the National Bank of the State of Missouri—has in his possession, which is the proceeds of a certain draft drawn by August Taussig on the firm of Taussig Brothers & Co., St. Louis, for $10,000, which said plaintiffs forwarded to the defendant on the 18th day of June, 1877, "for collection and credit." This sum of money the plaintiffs claim on the ground that the said bank did not collect it until after its suspension, on the 19th day of June, 1877, and therefore holds the money as plaintiffs' agent. The plaintiffs also seek to recover said sum of money on the ground that the directors of the defendant bank received' said draft for collection after they had knowledge of the fact that the bank was insolvent, and on the very day the bank suspended payment, and that, therefore, the receipt by the defendant bank of said money was a fraud on the plaintiffs, and they are entitled to the full proceeds. To this bill the defendant filed an answer, putting in issue the averments of the plaintiffs' bill, and stating the facts of the transaction specially; to which answer the plaintiffs replied. The facts, so far as material to the ground of the court's judgment, are, shortly, these: The defendant bank was the correspondent of the plaintiff bank. On June 18th, 1877, the plaintiffs transmitted to the defendant bank, "for collection and credit," a draft or bill of exchange for $10,000, drawn by one August Taussig on the firm of Taussig Brothers & Co., St. Louis. This was received by the defendant bank on the morning of June 19th, and the amount provisionally credited on account to the plaintiffs. The defendant bank on the same day presented the bill of exchange for payment, and received from Messrs. Taussig Brothers & Co. their check for the amount on the Franklin Savings Bank, of St. Louis, and thereupon surrendered the bill of exchange. This bill of exchange was specially endorsed to the defendant bank for collection, on ac-

count of the plaintiffs. On the same day (June 19th) the defendant bank presented this check, and had it certified as "good" by the Franklin Savings Bank, and took it away; and on the same day the directors of the defendant bank resolved that "all payments shall be suspended, and all its banking business shall cease, except to collect and preserve its assets." It never again opened its doors. The next day after the suspension its officers collected the amount of the certified check, and a receiver having been appointed by the comptroller of the currency, the money thus collected, having been mingled with the other money of the bank, came into his hands. No notice to the plaintiffs of the provisional credit was given until after the check had been collected, on the 20th day of June. The defendant bank was hopelessly insolvent at the time, and had been known to be so for a considerable time by its executive officers and a majority of the creditors; but as the judgment of the court does not proceed upon the distinct ground that the collection of the draft was for this reason fraudulent, the particular facts in this regard need not be stated in detail.

Two questions were argued: 1. Whether or not the defendant, Johnson, as receiver of the said bank, holds the amount of money so collected as a trustee for the plaintiffs, or whether they are simple contract creditors for said amount, and entitled only to their dividends as other creditors. 2. Whether or not the insolvency of the bank, together with the facts in evidence in relation to the knowledge of its directors of its insolvency, rendered the collection of the money by defendant bank a fraud against plaintiffs, so as to entitle them to recover the full amount of the proceeds of said Taussig draft.

William Patrick and Nathan Frank, for complainants.

Henderson & Shields, for defendant.

DILLON, Circuit Judge. It is only necessary to decide the first of the above questions, although counsel have discussed both of them with great fulness, and referred to numerous cases. While these cases have been considered, I do not feel called on to examine them at length in this opinion, for, in my judgment, on the facts here presented, the principles of law decisive of the case are clear and well settled.

In respect of the Taussig draft, out of which the controversy arises, the defendant bank was the collecting agent of plaintiffs. This is manifest from the relations of the two banks to each other, from the letter transmitting this draft "for collection and credit," and from the plaintiffs' special endorsement thereon to the cashier of the defendant bank "for collection on account of" the plaintiffs. This relation was only

known to the two banks, but knowledge of it—that is to say, that the defendant bank was merely the agent to collect this draft for the plaintiffs, and not the holder of it in its own right—was imparted to the drawees of the draft, the Messrs. Taussig Brothers & Co., by the above-mentioned special endorsement of the plaintiffs on the draft itself, and which was surrendered to the drawees when their check for the amount thereof on the Franklin Bank was received.

What, then, was the duty of the defendant bank, and the rights and obligations of the drawees, the Messrs. Taussig Brothers & Co.? It was the duty of the defendant bank, as the collecting agent of the plaintiffs, to present the draft for payment; and as there is no proof of any special authority to the defendant, or agreement or usage varying the legal rights of the parties, the defendant bank could receive in absolute payment thereof nothing but money, "that which the law declares to be a legal tender, or which, by common consent, is considered and treated as money." Ward v. Smith, 7 Wall. [74 U. S.] 452. This settled principle of law has not been drawn in question by the defendant's counsel.

As the defendant bank was not authorized to receive payment except in the manner above stated, and as the Messrs. Taussig Brothers & Co. knew that the defendant bank did not hold the draft as their own, but as agents to collect, they are charged with knowledge that they could only make a valid payment binding upon the plaintiffs by making such payment in money.

Their check for the amount of the draft would, at most, be but conditional payment—that is, payment when the money was actually received thereon by the agents of the plaintiffs. Even if the defendant bank had undertaken by a special agreement to receive the check in absolute payment (of which there is no pretence), such an agreement would have been void for want of authority from the plaintiffs to make it.

When the check was received in exchange for the draft, the drawers of the check must be taken to have constituted the defendant bank their agents to collect the check, in order that its proceeds might be paid to the plaintiffs. Without special authority to the defendant bank to take a check in absolute payment, or without ratification of its act in receiving a check instead of money, this act of the defendant would not bind the plaintiffs ex proprio vigore. The latter could affirm or disaffirm it, as they might elect. If the money had been received on the check by the defendant bank before its suspension, this would have presented a very different question from the one which actually arises.

The check was presented, but instead of payment being demanded and received, a certification of it was accepted. That was an act which did not bind the plaintiffs—

for it was alike without their knowledge or authority. If this was done by the defendant bank without authority from the Messrs. Taussig Brothers & Co., it might, as between them and the bank, discharge them as drawers of the check, but it could not operate to pay the bill of exchange for which the check was given, or in any manner vary the rights of the plaintiffs. Their debt subsisted until payment was made by Messrs. Taussig Brothers & Co.,' and no payment was made until the check was actually paid, which was the day after the failure of the defendant bank and its resolution to cease business and wind up its affairs. It is, therefore, a mistake to suppose that the act of the defendant bank, in originally receiving the check of the Messrs. Taussig Brothers & Co., or in subsequently procuring it to be certified, discharged Taussig Brothers & Co. from their liability to the plaintiffs. I am, therefore, of opinion that the defendant bank remained the agent of the plaintiffs to collect the bill of exchange on Taussig Brothers & Co. until the money was actually received. When the money was received, and not before, the agency of the defendant bank to collect terminated, and its authority to credit the amount to the plaintiffs and to make itself an absolute debtor therefor would then arise, provided it was still a going concern; but inasmuch as before it received the money it had failed, its agency to constitute itself a general creditor for the amount had ceased to exist. It would hold the amount as the agent of the plaintiffs, or in trust for it, subject to any balance due it from the plaintiffs.

Against this view the defendant urges two objections. The first is thus stated in the defendant's printed argument: "The letter transmitting the draft was simply asking for 'credit'—the depositing of the Taussig draft by the plaintiffs in the defendant bank. The words 'for collection and credit' mean 'credit.' While it is reasonable to suppose that the defendant bank would not give the credit until it was satisfied that it would obtain the money on the draft, yet the ultimate object of the plaintiffs being 'credit,' if they receive the credit, it matters not to them whether the defendant bank received the money or not; and as soon as the defendant bank was satisfied to give the credit, as requested, the plaintiffs' demand was complied with, whether the collection was ever made or not."

The argument is fallacious. The words "for collection and credit" do not mean that the credit shall be given until the money is collected. And it does make a difference whether the defendant bank ever received the money or not. On this point the language of Byles, J., in Sweeting v. Pearce, 7 C. B. (N. S.) 485, is applicable. He says: "It is not disputed that the general rule of law is that an authority to an agent to receive money implies that he is to receive it in

cash. If the agent receives the money in cash, the probability is that he will hand it over to the principal; but if he is allowed to receive it by means of a settlement of accounts between himself and the debtor, he might not be able to pay it over; at all events, it would very much diminish the chance of the principal ever receiving it; and upon that principle it has been held that the agent, as a general rule, cannot receive payment in anything but cash." This language is approved in the case of Pearson v. Scott, [38 Law T. (N. S.) 747] decided in the chancery division of the high court of justice, May 4th. 1878.

The second objection of the defendant's counsel to the view above stated, is "that, even if the defendant bank was the agent of the plaintiffs for the collection of the Taussig draft, and had no right to receive payment thereof in anything but money, the acceptance of the Taussig check, and having it certified, by defendant bank was a simple breach of their duty as such agents, for which they became instantly liable, on the 19th day of June, as a simple contract debtor." I answer that it has been shown above that the act of the defendant bank in having the check certified wrought no change in the plaintiffs' rights, and that their debt still remained. This unauthorized act, if it resulted in any injury to the plaintiffs, would undoubtedly give them a right to recover any damages suffered thereby, but it did not dissolve or terminate the relationship of principal and agent between the plaintiffs and the defendant bank, nor preclude the plaintiffs from the right to elect to ratify the act of receiving the check, and to claim the money afterwards collected thereon.

The force of the argument of the defendant's counsel, that the defendant bank, on the very day of its failure, and when it was in articulo mortis. had the right, by a credit in advance of collection, or by its unauthorized act in receiving the check and in procuring its certification, to terminate, without the plaintiffs' consent, the agency, and to constitute itself the actual debtor for the amount, against the plaintiffs' will and against their interest, I must confess I have been unable to perceive.

It is not unusual for bankers to credit their correspondents or customers with the amount of paper of a certain character at the time of its receipt for collection, but such credits are provisional only, being made in anticipation that the paper will be promptly paid, and with the right to cancel the credit if the paper is dishonored. First Nat. Bank of Trinidad v. First Nat. Bank of Denver [Case No. 4,810]. Such was the nature of the credit made in this instance. and the circumstance is immaterial, as it does not vary the ultimate rights of the parties.

The conclusion. therefore, is that the defendant bank was the agent of the plaintiffs to collect the draft on Taussig Brothers &

Co.; that the agency remained until the money was received on the check, and as this was after the defendant bank had ceased to do business, and had resolved to wind up its affairs, it was received in trust for plaintiffs (less the plaintiffs' indebtedness to the defendant bank); and hence the receiver has no right to hold it, to be distributed ratably among the general creditors of the bank. Let a decree be entered for the plaintiffs for $8,168.58, with interest from the date of the commencement of this suit at the rate of six per cent per annum. Decree accordingly.

Liability of bank as a collecting agent: First Nat. Bank of Trinidad v. First Nat. Bank of Denver [supra]; St. Louis v. Johnson [Case No. 12,235].'