RICHARD A. TYSON and WILLIAM S. RAWLS, trading
as TYSON & RAWLS *vs.* THE WESTERN NATIONAL
BANK OF BALTIMORE.

*Banks and Depositors—Negotiable instruments—Indorsement
"for collection"—Submission on Case stated—Rendering
judgment—Appeal.*

When a check, draft, or promissory note is indorsed in blank, or
to the order of the bank, and the proceeds credited to the
depositor as cash, the bank becomes the owner of the paper by
virtue of the indorsement, and in case it is not paid at maturity,
it has the ordinary remedies which belong to the indorsee of
instruments of this character which has been dishonored.

Where a check or draft is deposited with a bank by a customer,
with an indorsement: "For collection for account of" (the
depositors,) this indorsement is not adequate to pass to the bank
the title to the paper.

T. & R. were bankers in Greenville, N. C., and kept an account
with N. & Sons, bankers in Baltimore. They from time to
time forwarded by mail to N. & Sons, drafts, checks, and notes
of different persons, and they were indorsed: "For collection
for account of T. & R., Greenville, N. C." N. & Sons would
at once pass to the credit of T. & R. upon their ledger account,
as cash all checks and sight drafts, and would promptly inform
them by mail of the amount of such credit. T. & R. were
entitled to check against such credits as soon as they were
entered, and N. & Sons treated and used as their own property
the sight drafts and checks so credited, in same manner as if
they had been deposited over their counter in the ordinary way;
but T. & R. did not know and did not inquire how N. & Sons
treated and dealt with such drafts and checks. If any of the
sight drafts or checks which were credited as cash were dis-
honored by the parties on whom they were drawn, N. & Sons
would charge the account of T. & R. with them, and give them
notice by mail. When promissory notes, or time drafts were
mailed to N. & Sons they were not entered to the credit of

Tyson & Rawls *vs.* Western Natl. Bank.

T. & R. until they had been collected. There was no special agreement between these parties in regard to their relations with each other except such as arose from their course of dealing. On the 9th of January, 1892, T. & R. forwarded to N. & Sons a check drawn on a bank in North Carolina which they had discounted, and they indorsed it for collection for their account. N. & Sons credited it to them as cash, and so informed them by mail, and indorsed it for value to the W. N. Bank of Baltimore. The bank collected the check on or about the 24th of February, 1892, and retained the proceeds as its own property. On the 11th of January, 1892, T. & R. forwarded to N. & Sons a sight draft which they had discounted, and which they indorsed for collection for their account. N. & Sons credited it to them as cash, and so informed them, and indorsed it for value to the W. N. Bank of Baltimore. The bank collected the draft on the 14th of January, 1892, and held the proceeds as its own. N. & Sons failed on the 14th of January, 1892, subsequent to their indorsement of the check and draft to the W. N. Bank of Baltimore; but they were insolvent at the time they received the check and draft from T. & R. and upon a proper investigation of the business, this would have been apparent to the surviving partner, who had charge of the affairs of the firm, but it was not known to T. & R. nor to the W. N. Bank. N. & Sons had an account with the W. N. Bank, in which the check and draft were credited as cash. They overdrew their account and never made it good. T. & R. never checked to the full extent of their credit with N. & Sons, but always kept a balance in their favor, and had a balance greater than the amount of the check and draft in question. In an action *of trover* brought by T. & R. against the W. N. Bank for the wrongful conversion of the proceeds of the check and draft, it was HELD:

That the terms of the indorsement upon the check and draft gave legal notice to all persons receiving them, that T. & R. were the owners of the papers, and that N. & Sons were merely agents for collection; and that the W. N. Bank could therefore acquire no title by the indorsement made to it, and was responsible to T. & R. for the proceeds collected.

Where a case is submitted to the trial Court upon an agreed statement of facts, it should affirmatively appear that it is submitted to the Court for its opinion on the law, and that it is requested to render a judgment in accordance therewith, without this provision it is error in the Court to render judgment, and upon appeal the judgment will be reversed and the case remanded.

APPEAL from the Court of Common Pleas.

This was an action of *trover* by the appellants against the appellee for the wrongful conversion to its own use, of the proceeds of certain negotiable instruments. The verdict and judgment being for the defendant, the plaintiffs appealed. The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., ROBINSON, BRYAN, FOWLER, PAGE, ROBERTS, MCSHERRY, and BRISCOE, J.

*Leigh Bonsal,* and *Edgar G. Miller, Jr.,* for the appellants.

*Samuel D. Schmucker,* (with whom was *George Whitelock,* on the brief,) for the appellee.

BRYAN, J., delivered the opinion of the Court.

Tyson and Rawls brought suit against the Western Bank of Baltimore. The facts, so far as they are material, are as follows: The plaintiffs, who were bankers in Greenville, North Carolina, for two years before the transactions now in question, kept an account with Nicholson & Sons, bankers in the City of Baltimore. They from time to time forwarded by mail to Nicholson & Sons drafts, checks and notes of different persons, and they were endorsed in this manner: "For collection for account of Tyson and Rawls, Greenville, N. C." Nicholson & Sons would at once pass to the credit of Tyson and Rawls upon their ledger account as cash, all checks and sight drafts, and would promptly inform them by mail of the amount of such credit. Tyson and Rawls were entitled to check against such credits as soon as they were entered, and Nicholson & Sons treated and used as their own property the sight drafts and checks so cred-

ited, in the same manner as if they had been deposited over their counter in the ordinary way; but Tyson and Rawls did not know and did not inquire how Nicholson & Sons treated and dealt with such drafts and checks. If any of the sight drafts or checks which were credited as cash were dishonored by the parties on whom they were drawn, Nicholson & Sons would charge the account of Tyson & Rawls with them, and give them notice by mail. When promissory notes or time drafts were mailed to Nicholson & Sons, they were not entered to the credit of Tyson & Rawls until they had been collected. There was no special agreement between these parties in regard to their relations with each other, except such as arose from their course of dealing.

On the ninth of January, 1892, Tyson & Rawls forwarded to Nicholson & Sons a check of P. E. Braswell on the State Bank of Commerce, Hendersonville, North Carolina, for four hundred dollars, payable to the order of Jarvis & Blow. They had discounted this check, and they endorsed it for collection for their account; Nicholson & Sons credited it to them as cash, and so informed them by mail, and endorsed it for value to the Western National Bank of Baltimore. The bank collected the check on or about the twenty-fourth of February, 1892, and it retained the proceeds as its own property. On the eleventh of January, 1892, Tyson & Rawls forwarded to Nicholson & Sons a sight draft of J. C. Cobb & Brother on Cobb, Brothers & Gillian, of Norfolk, Virginia, for eight hundred dollars. They had discounted this check, and they endorsed it to Nicholson & Sons for collection for their account. Nicholson & Sons credited it to them as cash, and so informed them by mail, and endorsed it for value to the Western National Bank of Baltimore. The bank collected the draft on the fourteenth of January, 1892, and it holds the proceeds as its own. Nicholson & Sons failed on the

fourteenth of January, 1892, subsequently to their endorsement of the check and draft to the Western National Bank ; but they were insolvent at the time they received the check and draft from Tyson & Rawls, and upon a proper investigation of the business, this fact would have been apparent to the surviving partner, who had charge of the affairs of the firm ; but it was not known to Tyson & Rawls nor to the Western Bank. Nicholson & Sons had an account with the Western Bank in which the check and draft were credited as cash ; they overdrew their account and have never made it good. Tyson & Rawls never checked to the full extent of their credit with Nicholson & Sons ; but always kept a balance in their favor, and at the time of their failure had a balance greater than the amount of the proceeds of the check and draft in question. It is admitted that both parties to this suit have acted in good faith in all of their dealings in the matters now in issue.

It is well settled that when a customer of a bank deposits money to the credit of his account, the money becomes the property of the bank. The customer is creditor and the bank is debtor, with all the ordinary incidents belonging to that legal relation. There is no fiduciary connexion between them. The depositor parts with his money, and the bank contracts an obligation to pay such checks as he may draw to an amount not exceeding the sum deposited. The consideration which the depositor receives for his money is the absolute and unconditional contract by the bank to pay his checks to the extent of his deposit. And the same rule obtains in the case of checks, drafts and promissory notes, wherever, under the circumstances of the case, it is applicable; that is to say, wherever the bank becomes the owner of the commercial paper, and the customer acquires the unconditional right to draw for the pro-

ceeds. When a check, draft or promissory note, is endorsed in blank, or to the order of the bank, and the proceeds credited to the depositor as cash, the bank becomes the owner of the paper by virtue of the endorsement. And, in case it is not paid at maturity, it has the ordinary remedies which belong to the endorsee of instruments of this character which have been dishonored. In the present case the check and draft were deposited with Nicholson & Sons with an endorsement in these words: "For collection, for account of Tyson & Rawls." This endorsement was not adequate to pass to Nicholson & Sons the title to these papers. It has been so held by this Court, and the Supreme Court of the United States, and other Courts. In *Sweeny vs. Easter*, 1 *Wallace*, 166, it was said: "The words 'for collection' evidently had a meaning. That meaning was intended to limit the effect which would have been given to the endorsement without them, and warned the party that, contrary to the purpose of a general or blank endorsement, this was not intended to transfer the ownership of the note, or its proceeds." In *White vs. National Bank*, 102 *United States*, it was said: "The plain meaning of it (the endorsement) is that the acceptor of the draft is to pay it to the endorsee for the use of the endorser. The endorsee is to receive it on account of the endorser. It does not purport to transfer the title of the paper or the ownership of the money when received. Both these remain, by the reasonable and almost necessary meaning of the language, in the endorser." The same meaning was attributed to such an endorsement in *Cecil Bank vs. Farmers Bank of Maryland*, 22 *Md.*, 148. It would be superfluous to make further citations on this point. The endorsement did not pass the title, and no other way has been shown in this case, by which it could have been passed. Entering the amounts represented by these papers as cash to the credit of Tyson

& Rawls, is very far from having such an effect. It was the clear understanding that this was not an absolute and unconditional credit; but that it was to be charged back to the depositors in case the paper should not be paid at maturity. The paper was not sent to Nicholson & Sons to be discounted, or to be purchased by them; but it was entrusted to them as agents to collect it; and Nicholson & Sons could not treat it as a discount, or purchase except by making an agreement to that effect with their correspondents. It probably suited their mutual interest and convenience to make these qualified entries. The depositaries probably had sufficient confidence in the pecuniary ability of these depositors to give them a credit for the short time that would intervene before the maturity of sight drafts. It is a very common practice with bankers to deal in this manner with their customers who are in good credit. In the argument, this entry was likened to a collection of the commercial paper by the depositary. It was not in point of fact a collection. Nor was it similar in its effects and consequences. When a collection is made, the proceeds are placed absolutely and unconditionally to the credit of the depositor; and he is no longer under any responsibility on account of the paper deposited; as that question has been irrevocably settled by payment. In point of fact when collected the paper has lost its vitality by the settlement and satisfaction of all rights which can arise from it. It would have been perfectly competent for Nicholson & Sons to agree with Tyson & Rawls that they would consider this paper as collected, pay them the amount of it, and relieve them from all responsibility on account of it. But no such agreement was made, their contract was entirely different. If the paper had not been paid at maturity, it would have been charged back to Tyson & Rawls. It would be very unjust to hold Tyson & Rawls responsible for the contin-

gency of non-payment of these instruments, and at the same time to hold that they had lost all interest in them by a sort of constructive and metaphysical collection. It may be objected that as the check and draft were actually paid at maturity, the contingent responsibility of the depositors has not accrued.   But we must judge of legal rights by the state of the facts which exist at the time they arise; and not by events which occur afterwards.    One circumstance existing at the time will show the value of the cash entry as a consideration for the transfer of the check and draft.    Nicholson & Sons were insolvent when the deposit was made, and they knew or ought to have known their pecuniary condition; and as a matter of course that the credit entry of cash was a mere delusion.    Upon the whole it appears to us that the title to these papers did not pass to Nicholson & Sons.    There has been much apparent conflict between the authorities on the questions which we have discussed.    But the conflict is more in appearance than in reality.    In most, if not all, of the cases which have held that when checks, drafts and promissory notes have been deposited with a bank, and credited as cash to the depositor, the title to the negotiable paper has passed, it will be found that it was either endorsed in blank, or made payable to the banker.    On the face of the paper he was owner, and in case it was dishonored, he had his remedy against the depositor as endorser.    The opinion in *National B. & D. Bank vs. Hubbell*, 117 *New York*, 384, contains a very clear and convincing exposition of the difference between the rights of the banker in case of such deposit, and one where the paper is endorsed for collection.    And even in a case where a sight draft was deposited payable to the order of the bank, and was credited as cash, it was held by the Supreme Court of the United States that the title to the draft did not pass, because the accompanying circumstances showed that it was not so

intended; and the Court said that "the property in notes or bills transmitted to a banker by his customer to be credited to the latter, vest in the banker only when he has become absolutely responsible for the amount to the depositor," and that "such an obligation previous to the collection of the bill can only be established by a contract to be expressly proved, or inferred from an unequivocal course of dealing." *St. Louis, &c., Railway Co. vs. Johnson,* 133 *United States,* 566. The terms of the endorsement of the check and draft in this case gave legal notice to all persons receiving them, that Tyson & Rawls were owners of the papers, and that Nicholson & Sons were merely agents for collection. *Cecil Bank vs. Farmers Bank of Maryland,* 22 *Md.,* 148. The Western Bank could therefore acquire no title by the endorsement made to it; and is responsible to Tyson & Rawls for the proceeds collected.

This case was submitted to the trial Court upon an agreement signed by counsel which begins in the following terms : "It is agreed by the plaintiffs and defendant that this case be tried before the Court without a jury, and upon the following statement of facts hereby agreed upon." If this is the substitution of the Court for a jury, as the language seems to indicate, the rulings of the Court ought to be brought before us by a bill of exceptions, just as they would be in a jury trial. This point has often been decided. Many of the cases on this question are collected in *Trustees of the Methodist Episcopal Church vs. Browne,* 39 *Md.,* 160; more recent decisions are *McCullough vs. Biedler,* 66 *Md.,* 283, and *Jackson vs. Commissioners of Salisbury,* 66 *Md.,* 459. When the Court takes the place of a jury the circumstance that the facts were admitted can make no difference; because facts may be admitted before a jury as well as before a Court, and in either case the law requires that the specific point or question to which objection is made, must be shown to

us by a bill of exceptions. But parties may make a case stated for the opinion of the Court. This is a very old practice, and is quite distinct from the right given by the Constitution to try a case by consent before the Court without a jury. In the former case the Court is in the exercise of its inherent functions to decide questions of law submitted to it; all the facts must be stated, and before the Act of 1888, chapter 317, the Court could not draw inferences from them, unless there was an agreement to that effect. In a trial before the Court sitting by consent without a jury, it deals with the facts in all respects as a jury would do. In a case stated, it ought affirmatively to appear that it is submitted to the Court for its opinion on the law, and that it is requested to render a judgment in accordance therewith. An examination of the numerous cases of this kind which appear in our Reports will show that this is the approved practice in civil cases. We are not now concerned with criminal procedure. In a comparatively recent case in this Court, *Brinkley vs. Hambleton & Co.*, 67 *Md.*, 169, the printed volume does not show that this practice was followed; but the transcript of the record shows distinctly that the case was submitted to the Court for its opinion, and that it was requested to enter judgment for plaintiff or defendant according as its opinion might be. And there are other cases in which the printed volume omits this portion of the case stated, although contained in the transcript of the record. It has been adjudged so important that this Court in *Marine Bank vs. Merchants' Bank*, 12 *Gill & Johnson*, 498, held that it was error in the trial Court to render judgment without this provision. They say "there being no provision in the case stated as to judgment to be entered after the Court's opinion is expressed on the question submitted, the Court can give no judgment, and the cause must be remanded." See also *Burgess vs.*

*Pue,* 2 *Gill,* 291, and other cases. It is also customary to state that a right to appeal is reserved to each party where an appeal is contemplated. From the peculiar form of the statement of facts in this case, we were in some doubt whether we could consider the questions presented. But as the counsel on both sides regarded it as a case stated, and so argued it ; and as, although we feel the necessity of maintaining the established methods of procedure, we are always very unwilling to permit justice to be impeded by matters of form when it can be properly avoided ; we have thought that it was appropriate to express our opinion on the matters in controversy, according to the wish of counsel on both sides. Following the precedent in *Marine Bank vs. Merchants' Bank,* we will reverse the judgment, and remand the case. As the parties now know our opinion, they can settle this controversy without further litigation if they elect to do so.

*Reversed and remanded.*

(Decided 16th March, 1893.)

McSHERRY, J., dissented.

ALVEY, C. J., delivered the following opinion :

As the judgment appealed from must be reversed, and the case remanded for a new trial, because of the omission in the case stated to provide for the judgment to be entered in accordance with the opinion of the Court on the facts, (*Marine Bank vs. Merchants' Bank,* 12 *G. & J.,* 498 ; *Burgess vs. Pue,* 2 *Gill,* 254, 291,) I prefer to express no opinion upon the facts contained in the defective statement. A proper decision of the case may depend essentially upon facts that are not definitely stated in the case as now presented. *St. Louis & San Francisco Railway Co. vs. Johnston,* 133 *U. S.,* 566.

(Filed 16th March, 1893.)