## The National Bank of Commerce of Seattle *vs.* Caleb C. Johnson.

Opinion filed November 14th, 1896.

### Bank as Collecting Agent.

When an instrument is intrusted to a bank for collection, the bank secures no title thereto, and no right to hold it in any other capacity than as agent.

### Relation of Debtor and Creditor.

If, from the indorsement, or the circumstances of the case, it appears that the bank was to credit the owner of the paper with the amount thereof, when collected, such bank becomes, upon receipt of the money, the debtor of the owner, and at this moment the relation of principal and agent is transmuted into that of creditor and debtor.

### Indorsement for Collection Does Not Transfer Title.

When the owner of paper indorses it for collection, this is notice to every person or bank into whose hands the paper may come that the owner has not parted with his beneficial title, but has merely parted with possession, for the sole purpose of collection. The paper remains the paper of the owner down to the moment of collection, no matter how many hands it may pass through in the process of transmitting for collection; and no one through whose hands it passes can, before such collection, by credits, advances, or in any other way, secure any lien thereon or right thereto as against the owner, who may at any time prior to collection follow it into the hands of any subagent.

### Agent Must Collect in Cash Only.

In the absence of circumstances showing a contrary purpose on the part of the owner, the agent or subagent has authority to receive only cash in making the collection; and, if he accepts other paper instead of cash,--as a draft or check,--the owner may treat either the original or the substituted paper as his property, and may follow it in the hands of the bank receiving it, although such bank has credited it as cash to the bank transmitting the original paper to it for collection. The right to make such credit, and thereby change the relation of principal and agent to that of creditor and debtor, does not exist until the agent collects the claim in money, unless there is something in the circumstances of the case showing that the parties intended that the agent should be authorized to accept, at its own risk, a draft or check instead of cash.

### Right of Owner to Trace Funds.

But when cash is received, and credited to the transmitting bank, the relation of principal and agent between the collecting bank and the owner of the paper ceases; and thereafter whatever right the owner has as against the collecting bank is to the credit in favor of the transmitting bank, so far as he can trace the proceeds of his property into such credit.

### Intervener Entitled to Dividends.

Intervener held a certificate of deposit issued to him by the Lloyds National Bank. He indorsed it for collection and credit to the Anacortes Bank, which forwarded it for collection to the plaintiff. Plaintiff received from the Lloyds National Bank its draft on a St. Paul bank, and surrendered the certificate. It gave the Anacortes Bank credit for the amount of the draft, and that bank reported to intervener that the certificate had been collected, and, at his request, issued to him its certificate for the amount reported as collected. The St. Paul draft was not paid. The plaintiff immediately notified the Anacortes Bank that the collection had not been made, and charged the amount back to it. The Anacortes Bank notified the intervener of this fact, and he surrendered his certificate issued by it. That bank credited to the plaintiff the amount of the supposed collection. The plaintiff at no time since this has claimed to be the owner of the draft, or to have any interest therein, save as collateral to its claim against the Anacortes Bank for an overdraft. *Held,* that the intervener is the owner of such draft, and entitled to receive the dividends thereon payable out of the assets of Lloyds National Bank declared by the comptroller of the currency.

### Time Certificate Surrendered Immaterial on the Facts.

The fact that the intervener did not surrender up his certificate until after the Anacortes Bank had suspended operations does not affect the question; it appearing that the plaintiff had, in accordance with the facts claimed that the collection had not been made, and had charged back the draft to the Anacortes Bank, and the intervener having acted on such claim, and acquiesced therein, by surrendering his certificate issued to him by the Anacortes Bank, without any withdrawal of such claim being made by plaintiff, and the plaintiff insisting down to and upon the trial that it had not made the collection, but that it merely held the draft as collateral to its demand, against the Anacortes Bank for an overdraft.

Appeal from District Court, Stutsman County; *Rose,* J.

Action by the National Bank of Commerce of Seattle against Caleb C. Johnson, receiver of the Lloyds National Bank of Jamestown. Adolph W. Geschke intervened, and from a judgment in his favor plaintiff appeals.

Affirmed.

*Edgar W. Camp,* for appellant.
*Fredus Baldwin,* for respondent.

CORLISS, J. The contest before us relates to the rights of the parties to this litigation to two dividends declared by the comptroller of the currency, payable out of the assets of the Lloyds National Bank, which had become insolvent and had been placed

in the hands of a receiver. The claim on which the dividends were allowed was presented by the plaintiff. But, after they had been declared, the intervener, who had attempted without success to prove the same claim against the assets in the hands of the receiver, notified the receiver not to pay such dividends to the plaintiff. As a consequence, the receiver refused to pay the plaintiff, and, being sued by him to recover the same, he asked to be released on paying into court the amount due. The intervener appeared in the action, and filed his complaint in intervention. The receiver, on paying the money into court, was discharged from all liability, and the struggle is now between the plaintiff and the intervener to obtain possession of this fund in court. The plaintiff answered the complaint in intervention, and the case was tried before the court without a jury. The learned trial judge awarded the fund to the intervener, and the plaintiff brings the case to this court for a trial *de novo*. No serious controversy with respect to the fact seems to exist. The intervener was the owner of a certificate of deposit issued by the Lloyds National Bank, payable to his order. On June 23, 1893, he left it with the Anacortes Bank of Anacortes, in the State of Washington, for collection, taking a receipt therefor from such bank. It was indorsed by him as follows: "Pay to the order of Bank of Anacortes for collection for account of Adolph W. Geschke." The Anacortes Bank forwarded it in due course to the plaintiff, its regular correspondent at Seattle, Wash., for collection and credit. The intervener knew that it would be so forwarded for collection to a Seattle Bank. The plaintiff sent the certificate directly to the Lloyds National Bank, which, on receipt of the same, issued and sent to the plaintiff its draft for the amount due, on the National Bank of St. Paul, Minn. On receipt of such draft the plaintiff credited the Anacortes Bank with the amount due, and notified it of such credit, and also forwarded the St. Paul draft to its correspondent in St. Paul, the Merchants' National Bank of that city, for collection. The Anacortes Bank received notice of the credit July 13, 1893, and on that day charged up to the plain-

tiff the amount thereof; and thereafter it issued to the intervener, at his request, a certificate of deposit for the amount of such collection, he surrendering to the Anacortes Bank the receipt given him by such bank for the certificate of deposit issued by the Lloyds National Bank at the time he intrusted it to the Anacortes Bank for collection. Shortly afterwards the plaintiff received word that payment of the St. Paul draft had been refused, and immediately notified the Anacortes Bank of that fact by wire and by mail, and charged back to it the amount of such draft. This was July 14th. On or about the 15th the Anacortes Bank credited the plaintiff with the amount of such draft, and the intervener returned the certificate of deposit issued by it to him. The Anacortes Bank, however, received word of the dishonor of the St. Paul draft on the 14th; and on that day the intervener was notified by it of such fact, and requested to surrender his certificate of deposit. At this time he did not respond to this request, but shortly thereafter he did surrender it, and take from the Anacortes Bank a duplicate receipt for the original certificate issued to him by the Lloyds National Bank. The Anacortes Bank did not open its doors to transact business after the close of business hours on the 15th of July. Whether the intervener surrended his certificate before or after this suspension of business is not very clear. The only evidence which bears at all on the point is the testimony of Mr. Merritt, the cashier of the Anacortes Bank, that the intervener never, to his knowledge, surrendered the certificate while the bank was solvent, and the testimony of the intervener himself, that he thought that the duplicate receipt was issued to him after the bank had failed. It is perhaps a fair inference from this evidence that the surrender of the certificate was not made until after the bank had closed its doors. Upon these facts, we are to answer the question which of the two parties to this controversy has the legal right to the fund in court? What our answer to this inquiry will be will depend upon the further question whether the title to the claim against Lloyds National Bank, on which the two dividends have

been declared, was and is in the plaintiff or in the intervener.

The certificate of deposit issued by the Lloyds National Bank was the property of the intervener. He did not sell it to the Anacortes Bank, but merely intrusted it to such bank as his agent to collect the same and place the amount of such collection to his credit. By indorsing it for collection and credit, he notified the whole world that he had not parted with his title to the paper; that whoever might secure possession of it in the course of its transmission from bank to bank in the process of making the collection, according to the usages of banks, would hold it as his property, and therefore could not treat it as the property of any other person or of any corporation. The authorities are unanimous on this point. *Naser* v. *Bank*, 116 N. Y. 492, 22 N. E. Rep. 1077; *First Nat. Bank* v. *Bank of Monroe*, 33 Fed. Rep. 408; *Bank* v. *Armstrong*, 39 Fed. Rep. 684; *Bank* v. *Hubbell*, 117 N. Y. 384, 22 N. E. Rep. 1031; *Blaine* v. *Bourne*, 11 R. I. 119; *Claflin* v. *Wilson*, 51 Iowa, 15, 50 N. W. Rep. 578; *Hoffman* v. *Bank*, 46 N. J. Law, 604; *Bank* v. *Gregg*, 79 Pa. St. 384; *Bank* v. *Clark*, 23 Minn. 263; *First Nat. Bank of Crown Point* v. *First Nat. Bank of Richmond*, 76 Ind. 561; *Tyson* v. *Bank*, 77 Md. 412, 26 Atl. 520; *Armstrong* v. *Bank*, 90 Ky. 431, 14 S. W. Rep. 411; *Freeman's Nat. Bank* v. *National Tube-Works Co.*, (Mass.) 24 N. E. Rep. 779; *Sweeny* v. *Easter*, 1 Wall. 166; *Manufacturers Nat. Bank* v. *Continental Bank*, 148 Mass. 553, 20 N. E. Rep. 193; *Bank* v. *Hanson*, 33 Minn. 40, 21 N. W. Rep. 849; *Boykin* v. *Bank*, (N. C.) 24 S. E. 357; *Bank* v. *Armstrong*, 148 U. S. 50, 13 Sup. Ct. 533; *Old Nat. Bank* v. *German-American Nat. Bank*, 155 U. S. 556, 15 Sup. Ct. 221. The certificate being, to the knowledge of the plaintiff, the property of the intervener, it could not make advances thereon to the Anacortes Bank, or in any manner deal with it except as the property of the intervener. Until it should have collected the same, the relation of principal and agent would exist between it and the intervener. Any advance or credit which it might make prior to that time would not in any manner prejudice the intervener's right to it, or to other property in the hands of the

plaintiff which had been substituted for it. See authorities above cited. The intervener, having employed bank agencies to collect his paper,—having placed it in the channels of banking business for that purpose,—must be deemed to have assented to the usages of banks in transacting business of that character. *Freeman's Nat. Bank* v. *National Tube-Works Co.*, 151 Mass. 413, 24 N. E. Rep. 779. He testified that he was informed that the Anacortes Bank would make the collection through a bank in Seattle, and, having made no provision to have the identical money collected sent to him (there being no pretense that he expressed a willingness to pay the heavier charges incident to this mode of making the collection,) he must be deemed to have assented to the transmission of the money from one subagent to another, and finally to the original agent, by the well known and universally employed system of bank credits. The form of his indorsement to the Anacortes Bank rather strengthens this inference. He indorsed it to that bank, not only for collection, but for credit also; thereby authorizing that bank, the minute it should receive the money, to mingle it with its own funds, and give him credit for the same, thus changing the relation between him and the bank from that of principal and agent to that of creditor and debtor. *Freeman's Nat. Bank* v. *National Tube-Works Co.*, 151 Mass. 413, 24 N. E. Rep. 779; *Manufacturers' Nat. Bank* v. *Continental Nat. Bank*, (Mass.) 20 N. E. Rep. 193. He intended that the Anacortes Bank should, on collecting his money, become his debtor therefor; and, not having made provision for the transmission of the actual cash from bank to bank, he must be deemed to have agreed that the remittance should be made, through such intermediate agents as should be engaged in the collection and transmission of the money to the Anacortes Bank, by bank credits and debits. If the plaintiff had actually collected the amount due on the certificate, it could lawfully have credited the amount of such collection to the Anacortes Bank, and thus have transmuted its relations of agent for the owner to that of debtor to the Anacortes Bank. Thereafter the only right which

the owner would have had against the plaintiff would have been to claim that he could follow his property, in this changed form (*i. e.* the credit to the Anacortes Bank,) until, in due course of business, such credit should have been extinguished. So long as the plaintiff should continue to owe the Anacortes Bank on this credit, the intervener could claim the same as his own property in another form, and therefore could, while this condition existed, compel the plaintiff to account to him for the amount of such credit. But the plaintiff did not receive cash in making the collection. It violated its duty to the intervener in two important particulars. It sent the paper direct to the debtor, and it accepted a draft instead of money in payment of the certificate which it surrendered. That it should not have sent the paper direct to the debtor is obvious. *Bank* v. *Goodman*, 109 Pa. St. 422, 2 Atl. Rep. 687; *Drovers' Nat. Bank* v. *Anglo-American Packing & Prov. Co.*, 117 Ill. 100, 7 N. E. Rep. 601. And it is equally true that it had no authority to receive anything but cash in payment of the certificate, unless the tacit consent of the intervener that it might do so can be inferred from the circumstances of the case. 1 Morse, Banks, § 247; *Levi* v. *Bank*, 15 Fed. Cas. 415-417; *Foster* v. *Rincker*, (Wyo.) 25 Pac. Rep. 470-472; *Bank* v. *Ashworth*, (Pa. Sup.) 16 Atl. Rep. 596. Without passing upon this point, it is sufficient to say that only on receipt of cash had it implied authority to alter, by its own act of crediting the amount to the Anacortes Bank, the relation of principal and agent between it and the intervener. See cases last above cited. The true doctrine is that, up to the moment of receiving cash, the relation of principal and agent remains unaltered. Whatever change of form the principal's property undergoes while in the hands of the agent, it is still the property of the principal, and may be followed by him as such. If the agent surrenders the paper it holds, and receives other paper in its place, the owner of the original paper may claim the substituted paper, or he may repudiate the unwarranted action of his agent, and claim the original paper in the hands of the debtor. The latter is bound to take notice of the limitation

on the power of the agent which renders nugatory every act he does in connection with the collection, unless it is the surrender of the paper to the debtor for cash. In this case, after the plaintiff had accepted the draft, the intervener might, at his option, have treated the draft as his own property, or have insisted that the act of the plaintiff in surrendering the certificate without receiving cash was unauthorized, and that, consequently, the surrendered certificate was still his property. Unless he has by his conduct destroyed his right to follow the draft or the certificate, this privilege he may still enjoy. Although the plaintiff had credited the Anacortes Bank with the amount of this draft, the intervener had an undoubted right to follow the draft, and claim it as his property. But he did not elect so to do. On the contrary, he took the position that the money had been collected, and had reached the Anacortes Bank, and he accordingly took from such bank its certificate of deposit for the amount of such collection. Although this was done by him in ignorance of the facts, it is probable that, if the plaintiff and the Anacortes Bank, had not wished to take advantage of the fact that those credits had been made on a mistaken assumption, the intervener would not have been heard to complain.

If the history of this case embraced no other facts, we would be obliged to render judgment against the intervener. But at this particular point in the transaction the plaintiff elected to treat all that was done by it after receipt of the St. Paul draft as being done under a miscalculation as to the future payment of such draft, and notified the Anacortes Bank of such election. It charged back the amount of the collection, on the theory that the credit had been provisionally made. See *Fletcher* v. *Osbourne*, (Minn.) 57 N. W. Rep. 336; *Levi* v. *Bank*, 15 Fed. Cas. 415; *Balbach* v. *Frelinghuysen*, 15 Fed. Rep. 675. In this the Anacortes Bank acquiesced, and thereafter, acting upon the demand of the plaintiff that the mistake regarding the collection should be rectified, the intervener surrendered his certificate of deposit to the Anacortes Bank, and accepted in lieu thereof a duplicate of

his old receipt for the original certificate. The attitude of all the parties was, therefore, at this time, that the collection had not been made. On this point they were all of one mind. Certainly the plaintiff cannot be allowed to change front again, after the intervener has acquiesced in and acted upon its demand. The demand was reasonable, for, as a matter of fact, the collection had not been made. It is by no means certain that the plaintiff could not have enforced such demand, and compelled the refunding of the money. See 1 Morse, Banks, § 249. Still it is possible that the intervener could have resisted the attempt to compel him to refund by insisting that the plaintiff, having, in violation of its duty, accepted a draft instead of cash in payment, was liable to him the same as if it had received the money. But the intervener relinquished this vantage ground upon the plaintiff's own demand. He agreed with the plaintiff to treat the collection as not having been made, and surrendered the certificate issued to him by the Anacortes Bank. The consequence was that he became entitled to his original certificate, or the draft accepted in lieu of it. Only on one theory can the plaintiff claim the right to the dividends on such draft, and that is that it has made the collection. If it has made the collection in the form of a draft, and wishes to treat that draft as its property, it must then account for the value thereof. But this it has refused to do, and the intervener has acquiesced in the stand it has thus taken. On what principle, then, can it claim that it has any title to the draft? Indeed, it does not claim any title. Its whole case is overthrown by the testimony of its own cashier, and in its letter to the intervener, in which it refused to turn over to him the St. Paul draft. The substance of its claim is that it has a lien on the draft for advances it has made to the Anacortes Bank. But the draft did not belong to the Anacortes Bank. It was the property of the intervener, to the knowledge of the plaintiff, unless the plaintiff wished to treat it as so much cash received from the Lloyds National Bank, and take all the risk of its payment. But the plaintiff had distinctly announced that it was not willing to

assume such risk, but would take the position that the collection had not been made. Such being the case, it cannot treat the draft as its own property, nor can it claim any lien thereon growing out of an indebtedness owing to it by one not the owner of such draft. It must either treat the draft as cash, and remit the amount thereof, or it must hold it as the property of the intervener, as being a substitute for the certificate formerly belonging to him, which it had surrendered on receiving such draft. It could take no stand between these two inconsistent positions. Not only did it elect, with the full concurrence of the Anacortes Bank and the intervener, to treat the collection as not having been made, and to lay no claim to the draft as owner thereof, but it continued to adhere to this position down to and including the time of the trial of the case. The cashier of the plaintiff testified as follows: "When we received word that the draft was protested, we charged the amount back to the Bank of Anacortes. We held the certificate as we hold any collateral. We held it as security for the amount we paid out on the same to the Bank of Anacortes. That is our claim to the draft." When the intervener wrote to the plaintiff, demanding the draft as his property, the plaintiff replied that it held the draft as collateral to its advances to the Anacortes Bank. But it is urged that the intervener responded too late to the demand of the plaintiff that the mistake be rectified. It is insisted that, when he returned his certificate of deposit to the Anacortes Bank, that bank was insolvent, and had suspended operations. But we fail to see how that circumstance can affect the right of the intervener to act upon the demand of the plaintiff. The plaintiff did not assert that it would insist that the collection had not been made only in the event that the Anacortes Bank remained solvent and a paying concern. It took the broad position that it had not collected the original certificate, and this was strictly in accordance with the facts. Having assumed this position, and the intervener having abquiesced in its claim, it took the risk of collecting such advances as it might have made to the Anacortes Bank, and

therefore subjected itself voluntarily to all the hazards of the intervening insolvency of such bank. It doubtless thought that it had a lien on the intervener's draft for its advances to the Anacortes Bank, but such belief was utterly unwarranted by a single adjudication, or by any principle of law. The situation of the parties, therefore, is that the plaintiff did not make the collection, but took a draft in lieu of intervener's certificate. That draft belongs to him, the same as the certificate did. Indeed, he might have claimed that the act of the plaintiff in accepting such draft was wholly unauthorized, and insisted that he was still the owner of the original certificate. But he has demanded the draft, and has therefore elected to treat it as his property, so that whatever rights he has arise out of the ownership of such draft. It is upon this draft that the dividends sued for have been declared. They belong to the intervener. So does the draft.

The judgment of the trial court is affirmed. All concur.