## 12022

### MERCHANTS' NATIONAL BANK OF BALTIMORE v. BANK OF NINETY SIX

(133 S. E., 910)

1. BANKS AND BANKING.—South Carolina rule that bank receiving draft or bill of exchange for collection is liable for neglect governs as to checks sent by South Carolina bank to bank in another State for deposit and payable in South Carolina.

2. BANKS AND BANKING.—Where checks payable in South Carolina were forwarded for deposit of bank in another State and paid by bank on which they were drawn, former bank is liable for proceeds, where bank through whom it made collection failed before money was remitted.

3. BANKS AND BANKING.—Title to checks deposited and credited as cash to depositor passes to bank, who has remedy against depositor for checks dishonored, and in collecting it collects for itself and not for depositor.

4. BANKS AND BANKING.—Agreement of bank, to whom check was forwarded for deposit with Federal Reserve Bank, limiting liability of Federal Reserve Bank in forwarding checks, not known to forwarding bank, *held* to destroy ground of relationship of principal and agent between forwarding bank and Federal Reserve Bank.

Before SHIPP, J., Greenwood, October, 1924. Affirmed.

Action by the Merchants' National Bank of Baltimore against the Bank of Ninety Six. Judgment for defendant, and plaintiff appeals.

The following is the order of the Circuit Judge directed to be reported.

"Gentlemen, I am glad both of you have made your motions and stated your grounds fully. I have heard this

case with a great deal of interest, because I confess it has brought me along a new line; I have never tried any case just like this before. It is a case in which from the reading of the complaint you kinder feel like the plaintiff ought not to recover, because the plaintiff says the defendant gave it a check, the plaintiff sent it to the bank that owed the money, and the check was paid to their agent. As far as the Bank of Ninety Six was concerned, I can't see anything wherein the Bank of Ninety Six has failed. They sent a check on the Bank of Greenwood that was perfectly good; they had the money in the Bank of Greenwood to meet the check; it was presented by the Baltimore Bank through its agent; and it was paid to the agent of the plaintiff.

"Under the South Carolina law, the rule is perfectly plain. The South Carolina Supreme Court has held in a number of cases that, when a bank undertakes to collect money for another person, the agents which it employs are the agents of the bank and not the agent of the other person. It is claimed that this is a Maryland contract, and the law is different in that respect. I was somewhat in doubt on that point, because there is no doubt that, where a contract is made partly to be performed in one place, where the contract is made governs. Now, Mr. Park in his argument read a case from New York which satisfied me on that point. Granting that this is a Maryland contract, the Maryland Courts have no statutory law regulating this matter at all. It depends on the construction of the Courts of Maryland. When they come down to South Carolina to enforce a contract made in Maryland, and where Maryland has a certain policy and South Carolina has a different policy, and it depends on the construction of the Court as to what the law is, the South Carolina Court is not bound to follow the construction placed on it by the Maryland Court, and that seems to solve the difficulty.

"I direct a verdict for the defendant in the case.  I will ask you to write a verdict for the defendant in the case."

*Messrs. Mays & Featherstone,* for appellant, cite: *Construction of contract of bank accepting deposit of check subject to final payment:* Brady's The Law of Bank Checks, Secs. 207 and 220. *Same; implied contract under Maryland law:* 91 S. C., 96; 6 H. & J. (Md.), 146; 8 Md., 530; 24 Md., 52; 52 L. R. A. (N. S.), 618, note; 19 A. L. R., 263, note; Brady's The Law of Bank Checks, Sec. 204. *Degree of care due by agent to collect money:* 2 C. J., 726. *Situs of contract:* 6 R. C. L., 612. *Contract interpreted under lex loci contractus:* 85 S. C., 495; 85 S. C., 30; 23 S. C., 465; 73 S. C., 146; 19 S. C., 583; 129 U. S., 453; 32 L. Ed., 796; 91 U. S., 423; 23 L. Ed., 429; 24 A. S. R., 664; 2 C. J., 668; 8 C. J., 89. *Court of one State will enforce Common Law of another relative to commercial paper:* 51 A., 641; 72 N. E., 290; 103 U. S., 18; 26 L. Ed., 441; 18 L. R. A. (N. S.), 880; 6 A. & E. Enc. of Law, 284. *Common Law:* 11 S. C. Eq., 539; 2 Dallas, 394; 5 R. C. L., 806. *Ownership of check deposited and credited subject to collection:* 92 S. C., 440; 77 U. S., 412; 23 L. R. A., 161; 79 A. S. R., 627; 133 U. S., 566; 33 L. Ed., 683; 18 Ga. App., 599; 89 S. E., 1094; 158 Ky., 392; 165 S. W., 398; 150 N. C., 718; 64 S. E., 885; 113 N. C., 485; 18 S. E., 695; 128 Tenn., 320; 160 S. W., 848; 46 Wash., 23; 123 A. S. E. R., 912; 89 P., 157; 187 N. Y., 115; 79 N. E., 857; Brady's The Law of Bank Checks, Secs. 212 and 216; 2 Michie on Banks and Banking, 1374; 3 R. C. L., 524; 7 C. J., 597, note, and 599. *Cases distinguished:* 79 Md., 192; 47 A. S. R., 375; 23 L. R. A., 164; 264 U. S., 161; 68 L. Ed., 617; 13 L. R. A., 241. *Conflict of laws not a conflict of public policy:* 5 R. C. L., 911. *"Public policy" defined:* 32 Cyc., 1251.

*Messrs. Grier, Park & McDonald,* for respondent, cite: *Law of place of performance of contract governs:* 87 S. C., 236; 68 S. C., 238; 49 S. C., 406; 19 S. C., 583; 2 Bay,

377; 2 L. R. A., 1724, note; 69 L. R. A., 874. *Agent presumed to be intended to act under laws where agency to be performed:* 9 Peters, 627; 9 L. Ed., 253; 13 L. R. A., 201; 78 A. D., 137; 5 R. D. L., 964; 2 C. J., 668. *Bank receiving check for collection responsible for negligence of its correspondent: S. C. law:* 105 S. C., 161; 92 S. C., 441; 91 S. C., 97; 112 U. S., 276; 26 L. Ed., 722. *Sufficient presentment for payment:* Civ. Code, 1922, Sec. 3923. *Bank receiving check for collection and deposit acquired title to check: Maryland law:* 77 Md., 412; 23 L. R. A., 161; 23 L. R. A., 164; 3 S. C., 161; 11 L. R. A., 1060; 81 A., 294; 18 L. Ed., 707; 81 A., 227; 77 A. S. R., 613, note. *Courts slow to enforce foreign law contravening lex fori;* 5 R. C. L., 911. *Exposition of Common Law by Courts of forum adopted where conflict of laws occurs:* 3 L. R. A., 244; 138 Pa., 576; 12 L. R. A., 290; 82 N. Y., 413; 100 U. S., 239; 25 L. Ed., 580; 10 L. Ed., 865. *Lex fori followed where lex loci contractus contravenes policy of forum:* 29 S. C., 460; 19 S. C., 590. *Federal Courts not bound by expositions of general commercial law by State Courts:* 25 L. Ed., 583. *Duty of agent for collecting debt to accept only legal tender in payment:* 91 S. C., 96; 68 L. Ed., 620; 7 Wall, 447; 19 L. Ed., 207; 79 Md., 317; 25 L. R. A., 200; 29 A., 527; 47 A. S. R., 402; 6 F., 2d Ed., 389.

July 1, 1926.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE C. J. RAMAGE.

This is an appeal from the action of his Honor, Judge Shipp, in directing a verdict for the defendant.

On December 22, 1920, the Bank of Ninety Six, located at Ninety Six, S. C., sent by mail to Merchants' National Bank of Baltimore its check drawn on the Bank of Greenwood for $8,000.00, and on December 23, 1920, Bank of Ninety Six sent to Merchants' National Bank a check for $16,000.00. The plaintiff, in acknowledgment of these

items, sent back to defendant the following: "Your date or number 23—cash items credited—Subject to final Payment 16, 112.70." The $112.70 represented some other items with which we are not concerned. This same thing was done with the $8,000.00 item, but the slip had been misplaced by the court stenographer, or at least he could not find it, and it may, be well to state here that no blame. attaches to the stenographer for this. The checks were then delivered by plaintiff to the Baltimore branch of the Federal Reserve Bank of Richmond, in Baltimore, which forwarded in due course to its main bank at Richmond, which, in turn, forwarded to the People's Bank of Greenwood, which presented the checks for payment at Bank of Greenwood, and received payment. The People's Bank remitted to Federal Reserve Bank for these checks by its check on Palmetto National Bank of Columbia, which check went to protest for lack of funds; the People's Bank having failed before the money was paid. The Bank of Ninety Six at the time asserted that the plaintiff should stand the loss and drew checks on plaintiff. Plaintiff at first refused to pay these checks, but, on threat of defendant to sue on account of slander of credit, decided to pay the checks under protest, reserving all its rights with a view to testing its rights in a suit against Bank of Ninety Six. The Federal Reserve Bank had a contract with plaintiff that it would not be liable except for its own negligence and until payment in cash was received; that checks or drafts may be accepted in settlement for all collections. This special agreement which is set out in full in the case was not imparted to defendant, and the defendant, so far as the record shows, had nothing to do with it. Plaintiff has received an amount from the liquidating agent of the People's Bank which reduces its loss to $9,408, for which amount this action is brought.

The plaintiff relies on the Massachusetts rule hereinafter referred to, and the defendant on the English or South Carolina rule. Both sides moved for a directed verdict,

and Judge Shipp ruled in favor of the defendant, and his remarks will be incorporated in the report of the case.

The Massachusetts rule, which is the rule in a number of states, including Maryland, is, in substance:

"That when a bank receives paper for collection at a distant point, it engages to use reasonable efforts to collect and to pay its customer. The necessity of using other agencies being manifest, the bank is responsible only for reasonable care in the selection of such agencies, and, if such care is exercised, it will not be held liable for default on the part of the collecting bank."

The South Carolina rule or English rule, followed by the Federal Courts, is as follows:

"That a bank receiving a draft or bill of exchange for collection is liable for neglect of duty occurring in its collection, whether arising from the default of its own officers, or from that of its correspondent, or an agent employed by such correspondent, in the absence of any express or implied contract varying such liability."

In this case, when the defendant sent the checks to the plaintiff for the purpose of depositing the amounts of the checks, defendant warranted that these checks were good and would be paid on presentation to the Bank of Greenwood. Plaintiff adopted its own means and agencies to collect the checks. Wherein has the defendant assumed any obligation that has not been carried out to the letter? Where can any act of defendant be pointed out as a proximate or moving cause of the loss of the money? The check was good for every dollar, and was paid in full when presented, and so was the other check also. Suppose that plaintiff had sent a special messenger from Baltimore to Greenwood for the purpose of getting this money, and after the money had been collected by this messenger, and if he had stolen it, would any one claim that plaintiff would not be the loser rather than defendant? Now, in what particular does the supposed case differ in principle from the case at bar? The

fact that two banks were adopted as agents instead of a special messenger cannot change the principle involved.

Now as regards the rule as to what law governs, we hold that the South Carolina rule above set forth was and is the law of this case, and which governs the checks which were sent by defendant to plaintiff.

"It is obvious, therefore, that, in the absence of evidence as to the intent of the parties, any doubt as to the duty of the promissor in respect to performance, so far as it depends upon the law, should be governed by the law of the *situs* of that performance (*Lex Solutionis*)." Minor on Conflict of Laws, § 181.

The checks constituted the contracts between plaintiff and defendant; they were made in South Carolina, and were payable to plaintiff in the State of South Carolina; and, therefore, the contract is a South Carolina contract, and is controlled by South Carolina law.

"In all cases where the contract is to be performed in the country where it is made, the *lex loci* should be the rule of decision; but whenever it is made with a view of being performed in another country, then the law of the place of performance should be the true rule." *McCandlish v. Cruger,* 2 Bay, 377.

In *Association v. Rice,* 68 S. C., 238; 47 S. E., 63, the same rule is laid down. The same rule is in fact the generally accepted doctrine.

It is stated in the complaint that the checks were sent to "plaintiff in Baltimore, Md., for deposit in the defendant's account in the bank of the plaintiff at Baltimore, subject to their collection." These items were credited "subject to final payment" and by this is meant that, if the check was not paid when presented, defendant would then be liable to plaintiff for the amount of said checks.

"The principal in sending the agent forth is presumed to consent that he shall be governed by the laws of the State where he is to act." 2 *Corpus Juris,* page 668.

"Every authority given to an agent or attorney to transact business for his principal must, in the absence of counterproof, be construed to be to transact it according to the laws of the place where it is to be done." *Owings v. Hull,* 9 Pet., 627; 9 L. Ed., 246.

The same doctrine is held in *St. Nicholas Bank v. State National Bank,* 128 N. Y., 26; 27 N. E., 849; 13 L. R. A., page 241, and this case is somewhat like the case now under consideration. The St. Nicholas Bank of New York sent a check drawn upon a bank in Dallas, Texas, by "A. D. A.," payable to the order of "H. L.," to a bank in Tennessee, and this Tennessee bank sent the check to Adams & Leonard who collected the check and remitted to the Tennessee bank by means of a sight draft drawn by them upon Jemison & Co. of New York City. The Tennessee bank sent the draft in for collection, but before it was paid Adams & Leonard had failed, and the draft was not paid. The principle decided in the case was:

"A bank which has received for collection a check which it forwards to its correspondent for that purpose, cannot fulfill its obligation to the owner by delivering to him the correspondent's draft on a third person, drawn and used for transmitting the proceeds of the check, not to the owner, but to itself, and which has become worthless because of the insolvency of both drawer and drawee."

The rule was regarded as well settled in that case that, in the absence of special agreement, a bank receiving a check for collection was liable for the default of its correspondent to whom it sent the check (citing many cases). In other words, the agents selected by a bank in the position of plaintiff in this case are deemed to be its own agents and not the agents of the owner of the paper or check. In the case above cited, when the check was paid to Adams & Leonard, it was in contemplation of law paid to the Tennessee bank, which became absolutely bound to pay or remit to the New York bank. So it clearly appears from the South Carolina law

that Judge Shipp was correct in directing the verdict for defendant.

But a study of the law of Maryland also shows that he was correct, even if the law of that State should be held to apply to this case. The Maryland Courts, which enforce the Massachusetts rule, make a very important exception to, the rule, which puts plaintiff out of Court in this case. It is held that, where checks have been deposited with the bank and credited as cash to the depositor, the title to the paper passes to the bank, and it is the legal owner, and, if dishonored, the bank has its remedy against the depositor on the paper, and, where the bank takes a deposit of this character, it collects for itself and not for the depositor. *Tyson v. Bank,* 77 Md., 412; 26 A., 520; 23 L. R. A., 161. *Ditch v. Bank,* 79 Md., 192; 29 A., 72, 138; 23 L. R. A., 164; 47 Am. St. Rep., 375.

In note in 11 A. L. R., 1060, annotated, the doctrine that—

"where there is no definite understanding between the depositor and bank as to the ownership of paper, but the paper is indorsed by an unrestricted indorsement and deposited in the usual course of business with the bank, which gives credit to the depositor for the amount thereof, with the right to draw thereon, title passes to the bank."

Several cases from Maryland are cited in support of this doctrine as well as many from numerous other states. So, even under the true rule in Maryland, the plaintiff must fail in its contention.

Another reason also that is fatal to plaintiff's case is the agreement between plaintiff and Federal Reserve Bank set out in the case, which limited the liability of Federal Reserve Bank. When plaintiff entered into this agreement with the Federal Reserve Bank, that fact alone destroyed any ground of the relationship of principal and agent between defendant and the Federal Reserve

Bank, in the absence of any showing that defendant knew or acquiesced in this agreement.

It is the judgment of this Court that Judge Shipp's action in directing a verdict for defendant be sustained, and the judgment of the lower Court affirmed.

MESSRS. JUSTICES WATTS, COTHRAN, BLEASE and STABLER concur.

MR. CHIEF JUSTICE GARY did not participate.