# Charleston.

## FORD & BURDETT vs. SAMUEL McCLUNG.

### January Term, 1872.

McClung makes an order to the bank at Lewisburg payable to the order of P., who endorses it to D., who endorses it to plaintiffs F. & B. It is dated in September, 1862, but is not presented to the bank until after the war, and McC. has no notice of its non-acceptance and non-payment until that time. F. & B. bring suit against McC., the drawer. The parties all resided in Greenbrier county.

I. The making or drawing of the order implied the indebtedness of the drawer to the payee, to at least the amount of the order. And as the only issue between the parties in this action (*nil debet*) was, whether under the proofs in the case the plaintiffs were entitled to recover, it was not pertinent or material to such issue to inquire into the consideration upon which the order was founded. For, if by reason of the misconduct or negligence of the payee or his endorsees, the defendant is not liable to the plaintiff for the amount of the order, he is entitled to the benefit of it, whether it was originally drawn to pay an existing indebtedness to the payee, or for any other purpose.

II. It was not error to refuse to instruct the jury, that if McC. had no funds in the bank at the date of the order except Confederate money, he was not entitled to notice of dishonor by non-payment; and if he had no funds in the bank at the time of drawing the order, and he knew that fact, that no notice to him was necessary.

III. There is nothing in the circumstances of this case to bring it within any of the exceptions to the rule that, the drawer and endorsees of a bill of exchange, or order, are entitled to prompt notice of the non-acceptance or non-payment, in order that the former may look after his funds and withdraw or secure the same, and the latter may take the necessary steps to secure himself; and that upon the failure to receive such notice, they are discharged from liability; and the bill, or order, as between the drawer and payee or endorsee, will be considered paid.

IV. The law, in the case of failure to give notice, implies injury to the drawer, and nothing appears in the case to sufficiently rebut the presumption that, if he had been been duly notified of the non-payment of the order, he might not have secured his funds or at least arranged to have paid the order out of the same.

Action of debt brought in the circuit court of Greenbrier county, to August rules, 1866, by the firm of Ford & Burdett against Samuel McClung. Judgment for the defendant, June term, 1870.

The following check or order was the basis of the suit:

"SEPTEMBER 10, 1862.

"*Cashier of the Farmers' Bank of Virginia, at Lewisburg, Va.:*

"Pay to the order of Stephen A. Porter five hundred and thirty-four dollars and forty-one cents, for value received, and charge to my account.

[$534.41.]            "SAMUEL MCCLUNG."

Endorsed:

"Pay to the order of Smith Darnell.        STEPHEN A. PORTER."

"Pay to the order of Ford & Burdett.        SMITH DARNELL."

It is unnecessary to state the pleadings, as the case did not turn upon any technicality connected therewith, except that the issue was joined on *nil debet.*

The evidence was substantially that, in September, 1862, the plaintiffs cashed the check for Darnell, it appearing that the bank had sent off its funds from Lewisburg for safety. That after the war, Ford had called on defendant for the amount of it, and he had declined to pay. That Darnell had presented the check at the bank in September, 1862, and was informed that the funds had been carried away for safety, and was offered a check on Staunton or Lynchburg for the amount, but he declined to receive it. That on the 1st of January, 1862, defendant had a deposit in the bank of six thousand dollars, principally Confederate money; that no business was done in the bank from August, 1862, to October 15th of the same year, when it was resumed, and the business was generally transacted with Confederate money. That the check or order in suit was never again presented. Plaintiffs never mentioned to the cashier of the bank anything about the check or order until after the war.

Defendant proved that at the time of drawing the check or order he had deposits in the bank, largely in excess of the amount thereof; that defendant (by his own testimony) never heard of it again until after the war. The plaintiff offered to prove the consideration of the check, that it was given in consideration of the settlement of an estate of which the defendant was personal representative, and that he had

been allowed a credit therefor, &c.—but this was refused, and he excepted.

The plaintiffs moved the court to instruct the jury as follows: "If the jury believe that at the date of the check in the case, to wit, 10th September, 186?, the defendant McClung had no funds in the Farmers' Bank at Lewisburg, except Confederate money, then the said McClung was not entitled to notice of dishonor by non-payment; and if the jury further believe that at the time of drawing the check that defendant had no money in the bank at Lewisburg, and he knowing he had none therein, then that no notice was necessary."

But the court instructed the jury as follows: "Unless the jury believe from the evidence that the plaintiffs, when they became the endorsees of the check in the declaration mentioned, used due diligence to collect the same by presentation for payment at the bank, and if dishonored, gave immediate notice thereof to the defendant, then they will find for the defendant; and the fact that the effects of the bank were removed from the banking house at the time they obtained the check would not excuse them from the duty of presentation of the check for payment, nor from giving notice of its dishonor, unless it was notoriou-ly known that the effects had been removed; then such presentation was not necessary."

To the refusal of the court to give the instructions asked and the giving of the above instruction, the plaintiffs again excepted.

After the verdict of the jury for the defendant, plaintiffs moved to set it aside as contrary to law and evidence, which was overruled, and he again excepted.

*Dennis* for the plaintiffs in error.

*Mathews & Mathews* for defendant in error.

If the court below erred, it was in overruling the demurrer to the declaration and sustaining the objection made to four of the special pleas. It was not error to sustain the objection to the testimony offered by the plaintiff to show the consideration of the check, as between the defendant and S. A. Porter, the payee.

The plaintiffs, admitting that it was not shown necessary to the consideration of the check, yet contended that this testimony was admissible, "as a part of the *res gestæ!*" It cannot be seriously urged, in this court, that when a plaintiff sues upon negotiable paper, he may introduce testimony as to a long series of transactions, which gave rise to the making of the note sued on, and as to other transactions subsequent to the making of the paper, and do this upon the ground that such transactions are a part of the *res gestæ*. It was very evident that the plaintiff thought he could use such testimony, however illegal, with great effect upon the jury, and quite as evident that the court was constrained to exclude it. The check would have been worth no more to the plaintiffs, if Porter had paid for it with gold.

The plaintiffs say "the character of the debt which the defendant was attempting to discharge, ought to have gone to the jury in connection with his method of discharging it. As the declarations of a servant, at the time of leaving his master, are admissible as part of the *res gestæ*, to show the motive of his departure, so the character of the debt for which the check was really given, together with the subsequent fact that McClung had gotten credit for the amount of the check, ought to have gone to the jury, if, for no other purpose, to show his motive, which was, as the plaintiffs say, to make a safe investment of his worthless Confederate money, by paying off the legacy due to these heirs, and then reimbursing himself," &c. So, upon an action of debt upon an inland bill, by a holder against the maker, you may introduce testimony to show the motive of the maker in making the note, and to ascertain whether he was a successful speculator.

It would, perhaps, be more satisfactory to both court and counsel, if the learned attorney who makes this announcement would support it by a reference to pertinent decisions.

Great sympathy is manifested, on the part of the plaintiffs, for the heirs of Charles McClung, deceased, for whom the proceeds of this check, as is alleged, were intended. These heirs and distributees are not parties, either in name or interest, to this suit, nor are they represented before this court. All that they ever received for this check was the

Confederate money paid by the defendant, Ford, to Smith Darnell, and with this they have remained satisfied. If the defendant, Ford, will pay to these unfortunate distributees the amount of the check, in gold or legal currency, he may then, with some reason, complain if he cannot recover in legal currency. Having, however, paid Confederate money for it, he cannot expect to recover anything of greater value.

When he purchased the check, he knew that the bank was receiving and paying nothing but Confederate money; he knew that the prevailing, and, indeed, the exclusive currency in Greenbrier, was Confederate money; he knew, too, that the funds of the bank had been temporarily removed, and he knew that it was intended that this check should be paid with Confederate money. He was a merchant of Lewisburg, loyal to the Confederacy, selling his goods for Confederate money, of which he had, no doubt, an abundance, and which he was on the alert to invest in almost any kind of property. The appearance of Darnell with defendant's check was regarded by him as an opportunity for a speculation. He bought the check, paid for it with the treasonable currency of the late Confederacy, never presented it for payment, but kept it upon the chance of collecting it in legal currency after the war, and was disappointed, He gambled and lost, and his comments upon the conduct of the defendant are but the growl of a disappointed speculator.

The plaintiffs' counsel cites 1 Par. on Notes and Bills, p. 543: "If the drawee owes the drawer a sum of money, as executor, this has been held not to give the drawer such a right to draw in his own name as will entitle him to notice of non-payment," and asks why the converse of the proposition should not be true? Neither the proposition nor its converse can have any application here. This proposition simply announces the well settled rule, that when funds are deposited to one's credit, as a fiduciary, he cannot draw upon them in his individual character, or without describing himself as a fiduciary. If he does, he is not entitled to notice of the dishonor of his check.

It has never been held that one may not pay a debt or legacy due from him, as a fiduciary, with his individual funds.

The plaintiffs claim that the defendant had no funds in bank. 1st, "Because his money had been removed to some place of safety." 2d, "Because, if not removed, it was Confederate money."

As to the first reason: To have money in bank, it is not necessary that it should be actually in the vault of the bank, but it is sufficient if it is in its custody or control, or to one's credit on the books of the bank.

As to the second reason: If the defendant's funds were Confederate money, the check was drawn to be paid in such money, and this was known to the plaintiff, who purchased it with just such money.

Is the drawer of a check entitled to notice of dishonor? This question has been discussed, at some length, by the attorney for the plaintiff, though it is not, we conceive, a question of this case.

A check "must be presented within a reasonable time, in order to charge the drawer or endorser, in case of failure of the drawee. The fact that it is presumed to be drawn against deposited funds, makes it of even greater importance than in the case of a bill that a check should be presented, and that the drawer should be notified of the non-payment, and that he and any endorser should be discharged by neglect of notice." 2 Parsons on Bills and Notes, p. 71, and cases cited in Note C. "Where there is no presentment of the check, or no notice, there is, of course, a presumption of injury to the drawer." Ib. p. 71.

Facts to excuse notice have neither been stated in the declaration, nor have they been proven. "When a plaintiff relies on facts to excuse notice, he must state them in his complaint; and an averment of due notice is not sustained by proof of excusing facts." *Little* vs. *Phenix Bank*, 2 Hill, 425. Also, 2 Parsons on Notes and Bills, p. 72: "the rule of reasonable time is generally the same as to drawer and endorser." "And, in most cases, it is held that a check should be presented the day after it is received." Ib., p. 72, Note H and cases there cited.

"There is no doubt that a check must be presented for payment within a reasonable time, and it seems, by the best

authority, that this is the same time as required in the case of a bill or note." Ib., p. 73, and Note R.

In the *Merchant's Bank* vs. *Spicer*, 6 Wend., 443, Maroy, J., lays down the rule : " Checks are considered as having the character of inland bills of exchange, and the holder, if he would preserve his right to resort to the drawers and endorsers, must use the same diligence in presenting them for payment, and in giving notice of the default of the drawee, that would be required of him as the holder of an inland bill."

The *onus* of showing that the drawer has sustained no injury by the failure to give him notice rests on the holder. 2 Hill, 425 ; *Cruger* vs. *Armstrong*, 3 Johns. Cas., 5.

" It may be inferred, from all the cases, that the drawer is not generally liable until after demand on the drawee, and refusal, and, in this respect, is regarded only as surety of drawee." 2 Parsons on Notes and Bills, Ch. III., checks, p. 77.

"As checks are seldom made, or rightfully used, for circulation, a few days delay would charge the taker with negligence ; and whether the taker exercised reasonable caution, seems to be a question of fact for the jury." *Rothschild* vs. *Corney*, 9 B. & C., 388; *Brooke* vs. *Mitchell*, 9 M. & W., 15 ; *Both* vs. *Sterling*, 7 T. R., 423, 429.

The jury, in this case, are of the opinion that the plaintiffs had not exercised due diligence, and found a verdict for the defendant.

It is contended, in the plaintiff's argument, that " the court will take judicial notice of the fact that from the 17th day of April, 1861, to the close of the war, there were no officers in Greenbrier county, recognized as officers of the reorganized government of Virginia, the State of West Virginia, and by the United States, and this would include notaries public," and this statement is relied on to excuse the absence of notice.

The decisions of the courts of the United States would not authorize this court to hold that the acts of notaries of the States in rebellion are void, or that there was no legal offices of notary in these States during the war. In the case of *Tennett* vs. *McCally*, in the United States district court of Alabama, Judge Busteed held that acts done by persons in the States in rebellion, if regular and authorized by the powers *regnant*, must be recognized as legal, provided these acts were not done

in aid of the rebellion. He held that notaries public, postmasters and mail-carriers, were regular and authorized by the power *regnant*, and that their acts, in the premises, did not affect, in any manner, the issue between the governments of the United States and the Confederate States. This case was decided upon the authority of *Thorington* vs. *Hailley*, and *Texas* vs. *White*, 7 Wallace.

The intervention of a notary is not necessary to a notice of dishonor for non-payment. A certificate of a notary of a protest of a note has been made by statute evidence of the facts therein stated; but this certificate is not the only means by which these facts may be proved. It is not the *protest* of a check, but the notice of its dishonor that fixes the liability of the drawer. 2 Rob. Pr. (new) p. 192.

The fact that there was not a notary in Greenbrier, if such were the fact, cannot excuse the absence of notice. 2 Parsons on Bills and Notes, Ch. VII., § 1, p. 477.

It is not proven that the check was ever presented to the bank for payment, by any one, or that it had ever been dishonored. It was certainly never presented for payment by the plaintiffs. The plaintiff, Ford, does not state that he ever presented the check at the bank for any purpose, and it is proven that he never mentioned the check to the officers of the bank until after the war, and then he merely mentioned it, but did not present it at the bank.

It is not proven that the defendant ever knew that the check had not been paid, until the institution of this suit.

It is true that the plaintiff, Ford, testifying in his own behalf, states, that late in 1863, or early in 1864, he informed the defendant that the check had not been paid. The defendant testifies that he never heard of the check from the time he drew it, until after the close of the war.

It is evident, from the authorities already cited, that the court did not err in giving the instruction complained of, and that the plaintiffs were required to use due diligence to collect the check, and that it was for the jury to determine whether such diligence had been used.

As the plaintiffs have failed to prove that the defendant ever had notice of the dishonor of his check, or that the check was ever dishonored for non-payment, or even that it was ever

presented for payment, it is difficult to conceive of any ground upon which they can hope to recover in this action.

BERKSHIRE, P.  This was an action of debt, by the endorsees of an order, against the drawer.

· The order was drawn by the appellee, on the cashier of the Farmers' Bank of Virginia, at Lewisburg, in favor of Stephen A. Porter, and endorsed by the latter, before presentation to the drawee for acceptance or payment, to Smith Darnell, and by him to the plaintiffs.  There was a demurrer to the declaration and to each count, which was sustained, and leave given to the plaintiffs to amend the same, which, by consent of parties, was done in court.  The amended declaration, and each count, was also demurred to, but the demurrer was overruled.  The defendant pleaded *nil debit*, and also tendered five special pleas; numbers 2, 3, 4 and 5 of which pleas were, on motion of the plaintiffs, rejected, and issue was joined on numbers 1 and 6; but the latter was withdrawn by the defendant without objection, before the trial.  In the view that is taken of the case, it will not be necessary to consider any of the questions that might arise on the demurrer to the declaration or rejection or withdrawal of the pleas, as they could not be to the prejudice of the appellants.  The questions made in the record that it is necessary to consider, are three :  1st, Did the court err in refusing to allow the appellants to introduce evidence tending to prove the *consideration* of the order, mentioned in their first bill of exceptions?  The drawing or making of the order implied the indebtedness of the drawer to the payee to, at least, the amount of ·the·order. And as the only issue between the parties in *this action* was whether, under the proof in the case, the plaintiffs were entitled to recover, it could not, it appears to me, be pertinent or material to such issue, to enquire into the consideration upon which the order was founded.  For, if by reason of the misconduct or negligence of the payee or his endorsers, the defendant was not liable to the plaintiffs for the amount of said order, it is clear that he is entitled to the benefit of it, whether it was originally drawn to pay an existing indebtedness to the payee, or for any other purpose.  2d, Was there error in giving or refusing the instructions set out in the

appellant's second bill of exceptions? The plaintiffs and defendant each asked for an instruction, both of which seem to have been refused, and one given by the court in lieu of them. Neither the appellants nor appellee have complained here of the refusal to give the instruction asked by the latter, and it is, therefore, not necessary to consider it. I think there is nothing in the record to justify the instruction asked by the former, and that it was properly overruled. Nor is anything perceived in the instructions given by the court, of which the appellee can justly complain. 3d, Was any error committed in refusing the appellants a new trial, upon the facts disclosed by the record? This is a material enquiry, and goes directly to the merits of the whole controversy. The order bears date the 10th of September, 1862, and it appears that it was never presented by the appellants to the drawee for acceptance or payment, until after the close of the late rebellion, and that the appellee was not notified of the non-payment or dishonor of said order, and never in fact heard anything of it from the time he delivered it to Porter, the payee, until some time after the close of the said civil war, being a period of some three or four years.

But it was, nevertheless, earnestly and ably maintained by the counsel for the appellants, that, under the facts shown by this record, the appellants were excused from making such presentation to the drawee, and also from giving notice of the non-payment of the order, and that the appellee ought to be made liable for the amount thereof, in this action, notwithstanding such failure on their part.

The drawer of a bill of exchange, or order, is not *directly* liable to the payee or his endorser, but his *implied* obligation or contract is to pay, in the event the amount is not paid by drawee. And the general rule is well established, that the drawers and endorsers are entitled to prompt notice of the non-acceptance or non-payment, in order that the former may look after his funds and withdraw or secure the same, and that the latter may take the necessary steps to secure himself; and that upon the failure to receive such notice, they are discharged from liability; and the bill or order, as between the drawer and payee or endorsee, will be considered paid. 1 Tucker Com., 395 and note; *Farmers' Bank* vs. *Vanmeter*, 4

Ran., 453.   But there are well-defined exceptions to this rule, and numerous cases may be found in which, under the peculiar circumstances of the case, the holder has been excused from presenting the bill or order to the drawee, or giving notice of the non-acceptance or payment thereof.   The testimony in this case, however, fails, I think, to furnish a sufficient excuse for such omission on the part of the appellants, or to bring them within the exceptional cases.   It does not appear that there was anything to prevent the appellants from presenting the order to the drawee for acceptance and payment; nor that if so presented, it would not have been paid or adjusted by the latter.   Nor, from aught that appears, can it with propriety be said that they could not have given notice of non-payment or acceptance, to the appellee, if the order had been so presented.   The residence of the parties does not appear, and there was certainly nothing in the extraordinary condition of the country, at the time, which necessarily precluded them from giving such notice.   It was argued that the appellee had no funds in the hands of the drawee at the time the order was drawn, and that he had notice or knowledge at the time that the funds of the bank had been removed from Lewisburg a short time previous.   But it does not so appear from the record.   On the contrary, it is shown that he had funds in the hands of the drawee to a much larger amount than the order at the time it was drawn (though the larger portion was Confederate currency), and there is nothing in the case from which it can be justly inferred that he had any notice or knowledge at the date of the order of such removal of the funds from said bank.

And it was also insisted that it satisfactorily appeared that the appellee had sustained no *injury* by reason of such failure on the part of appellants to give notice of non-payment, &c., and ought, therefore, to be held liable.   In my view, this is incorrect.   The law, in case of such failure to give notice, *implies* injury to the drawer, and nothing appears in this case to sufficiently rebut this presumption, or to justify us in holding that no injury *in fact* resulted in this instance to the drawer, from the negligence of the appellants; or in assuming that, if he had been duly notified of the non-payment of said order, he might not have secured his funds, or at least ar-

ranged to have paid the order out of the same. Upon the whole case, I think the judgment ought to be affirmed, with costs and damages.

The other members of the court concurred.

JUDGMENT AFFIRMED.