# Watt v. Gans & Co.

## Action of Assumpsit.

1.  *Bank checks ; presentation for payment ; must be seasonably made.* The holder of a bank check, in order to bind the drawer, is required to present it for payment within a reasonable time, which is dependent upon the facts of each case ; and where the payee receives a check in a place distant from the place in which the bank upon which it is drawn does business, in the absence of exceptional circumstances, it is his duty to forward it by the post to some person or collecting agency at the latter place on the day it is received or the following secular day, and such person or agency must present it to the bank not later than the day after it was received ; and if the payment is not thus regularly demanded, and the bank should fail before the check is presented, the loss will be the loss of the holder, who will have made the check his own by his laches.

2.  *Same ; same ; burden of proof.*—Bank checks are presumably drawn upon or against a deposit of funds ; and where the drawer establishes negligence or undue delay in the presentation of his check for payment, and the failure of the drawee bank after the expiration of the period within which, with due diligence, the check

[Watt v. Gans & Co.]

should have been presented, the presumption of injury arises, and there is cast upon the holder the burden of proving that the drawer suffered no loss or damage from such delay.

3. *Same; same; presumption of loss from delay in presentation can be rebutted.*—The presumption of loss to the drawer of a check, arising from the want of diligence on the part of the holder in the presentation of said check for payment, and the intervening failure of the drawee bank, may be rebutted by proof that the drawer had no available funds with said bank to meet the check, or that he withdrew them before the failure; but upon such presumption remaining unrebutted by proof, the loss falls upon the holder, to whose want of diligence in presentation it is attributable.

4. *Same; same; want of diligence or delay in presentation operates payment of debt.*—While a check received for a debt is of itself merely a conditional payment, its acceptance implies an undertaking of due diligence in presenting it for payment; and if the party from whom it is received sustains loss by the failure of the holder to exercise proper diligence in its collection, the check and its reception will operate as actual payment.

5. *Same; same; same; can be set up as a defense under a plea of payment.*—In an action of assumpsit upon the original debt, in the settlement of which a check was given, the failure of the plaintiff creditor to seasonably present the check for payment, whereby loss resulted, is available as a defense under a plea of payment.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN G. WINTER, Special Judge.

This was an action of assumpsit, brought by the appellees, A. & L. Gans & Co., against the appellant, J. T. Watt; and counted upon the common counts for goods sold and delivered, claiming as the amount due $437.

The defendant filed a plea upon which issue was joined, which was as follows : "The defendant for answer to the said complaint saith, that he has paid the debt, for the recovery of which this suit was brought, before the action was commenced."

The trial was had upon the following agreed statement of facts : "1st. During the year 1893 the plaintiffs were engaged in the wholesale clothing business in the city of Philadelphia and State of Pennsylvania, and the defendant was engaged in the retail clothing business in the town of Greenville, Alabama. On August 18th of said year defendant bought a bill of goods from plaintiff in Philadelphia amounting to four hundred and thirty-two 50-100 dollars ($432.50) as shown by the itemized

bill hereto attached, marked 'Exhibit 1' (one), and made a part of this instrument, which bill is correct; that said bill was to be 'dated' December 1, 1893, payable four months thereafter, interest to be added, but defendant had the option of paying the same within ten days from December 1st, at a discount of ten per cent.

"2d. That on December 9, 1893, defendant mailed his check to plaintiffs, payable to their order, on Joseph Steiner & Sons, bankers, at Greenville, Alabama, where defendant resided, for $389.25; said sum being the amount due plaintiffs after deducting the ten per cent. discount. That said check was received by plaintiffs December 12, 1893, after banking hours, the bank in Philadelphia being then closed; the plaintiffs placed said check in the Union National Bank at Philadelphia, with which plaintiffs did business, to be forwarded by said bank for collection for plaintiffs, on the next morning, towit, December 13, 1893; and said check was by said bank so forwarded to a bank of Charleston, South Carolina, on the same day; the latter bank receiving it on December 15th, and on the same day forwarded it to a bank at Montgomery, which said bank at Montgomery received it on December 18, 1893, and on the same day forwarded it to one A. G. Winkler, a merchant at Greenville, Alabama, for collection. That said Winkler received said check on the morning of December 19, 1893, and immediately upon its receipt, and during banking hours, presented it to said Joseph Steiner & Sons at their bank for payment, which was then refused. Said check was thereupon duly protested, the protest fees amounting to $4.50, all of which is still unpaid.

"3. That on December 18, 1893, said Joseph Steiner & Sons failed, making a general assignment, and are now insolvent.

"4th. That defendants had the amount of said check to his credit with said Steiner & Sons, at the time of said assignment. That Exhibits 2 (two) and 3 (three) hereto attached, are letters written by defendant to plaintiff's and received by the latter, and that exhibit 'G' hereto attached, accompanied said exhibit '2' (two), and is the check in question, and was tendered to defendant before the bringing of this suit. That exhibits 'A', 'B' and 'C' are letters written by plaintiffs to defendant and exhibit 'A' is a receipt sent by plaintiffs to defendant,

[Watt v. Gans & Co.]

upon receipt of said check, and before they had any notice or information that the latter would not be paid. That defendant was notified of the dishonor of said check and demand made upon him by plaintiffs for payment of said account, before the bringing of this suit. Letters above were inclosed in envelopes marked Exhibit A1, B2, C3, and dates thereon are admitted to be dates received and sent by parties." It is unnecessary to set out at length the exhibits referred to in the fourth section of the agreed statement of facts.

Upon these facts the court gave to the jury, at the request of the plaintiff, the following charge: "If the jury believe the evidence, they must find for the plaintiffs for the amount sued for." To the giving of this charge the defendant duly excepted.

There were verdict and judgment for the plaintiff. The defendant appeals, and assigns as error the giving of the general affirmative charge in favor of the plaintiffs.

CHARLES WILKINSON, for appellant.—1. Where the payee receives a check from the drawer in the same place where the bank is located, the payee must present the check before the close of the bank next day:—3 Amer. & Eng. Encyc. of Law, p. 213 ; 2 Daniel Neg. Instr., § 1590, (2 ed.), 547 ; 2 Morse Banks, § 421 ; Boone on Banking, § 172 ; Taylor v. Wilson, 11 Metc. (Mass.) 44 ; Industrial Co. v. Weakley, 103 Ala. 458.

If the payee, Gans, received the check from the drawer Watt, in a place distant, Philadelphia, from the place where the bank on which it is drawn is located, Greenville, it is his duty to forward it by the post to some person at the latter place, Greenville, on the next day ; and that person must present it on the day, or next day received by him.—2 Daniel Neg. Instr., § 1592 ; Byles on Bills, 20, 21.

A check, unlike a bill of exchange which need not be drawn on a deposit, is intended for immediate payment, and not for circulation.—2 Daniel on Neg. Instr., § 1595 ; Byles on Bills, 20 ; Industrial Co. v Weakley, 103 Ala. 458.

FARNHAM, CRUM & WEIL, contra.—1. The giving of his personal check did not discharge the original account, except by reason of the reputed negligence of appellees

[Watt v. Gans & Co.]

in presenting the check.—*Lane v. Jones*, 79 Ala. 156; *Keel v. Larkin*, 72 Ala. 493; 18 Amer. & Eng. Encyc. of Law, 167; *Taylor v. Wilson*, 45 Amer. Dec. 180. A receipt, given for a check or note and stating "in full payment of account," etc., is not conclusive, and does not preclude the plaintiffs from showing that such receipt was simply given in the ordinary mode, and upon the assumption that the check or note would be duly paid on presentation.—*Ocean Co. v. Ophelia*, 11 La. Ann. 26; *Heartt v. Rhodes*, 66 Ill. 351; *Follett v. Steele*, 16 Vt. 30; 18 Amer. & Eng. Encyc. of Law, 170.

2. What is a reasonable time, within which a check should be presented, is a question of law for the court, when the facts are developed.—*Aymar v. Beers*, 17 Amer. Dec. 538. It is the duty of the holder of a check to transmit it to a suitable person for collection, and the drawee bank is not a suitable agent for such person. *Anderson v. Rogers*, 27 L. R. A. 248; *Goodwin v. Nat. Bank*, 14 W. N. C. (Pa.) 534; *Bank v. Anglo-Amer. Co.*, 57 Amer. Rep. 855; *Aymar v. Beers*, 17 Amer. Dec. 538; *Cox v. Boone*, 8 W. Va. 500; *Taylor v. Wilson*, 45 Amer. Dec. 180; *Smith v. Janes*, 32 Amer. Dec. 527.

3. By the giving of the check to the plaintiffs, there was no assignment of the fund in the hands of the bank, and plaintiffs had no right of action against the bank. Their remedy is against their debtor and his remedy is against the bank. "A check drawn and delivered to the person to whose order it is payable, does not, without acceptance by the drawee, operate as an assignment of the sum in his hands for which it is given, * * * and there being no privity, expressed or implied, between the payee and the drawee, the former can maintain no action on it against the latter."—*Nat. Com. Bank v. Miller & Co.*, 77 Ala. 168.

4. The only plea is "Payment." There is no denial or question as to the amount involved, or that appellant purchased the goods as stated in the complaint. This is admitted, but his liability therefor, is sought to be avoided by the plea of payment; and to sustain this, he attempts to show, not payment, by operation of law or by agreement between the parties, but by a state of facts, such as may constitute negligence on the part of appellees, resulting in damages to him; which he seeks, or proposes to set off or recoup, as against appel-

lant's demand. We submit that this evidence does not sustain a plea of payment.—*McCurdy v. Middleton*, ·82 Ala. 131; *McWilliams v. Phillips*, 71 Ala. 80; *Taylor v. Perry*, 48 Ala. 240.

HEAD, J.—In general terms, it may be said that the law imposes upon the holder of a bank check the duty of presenting it for payment within a reasonable time; and, if he fail to present the check seasonably, the delay is at his own peril. What is a reasonable time will depend upon the facts in each case; yet in the absence of exceptional circumstances, such reasonable time has been fixed. Thus it has been defined to be "the short-est period, within which, consistently with the ordinary employments and duties of commercial business, the duty of presentment and demand could be performed." Boone on Banking, 173; Story on Promissory Notes, 497.

In the case of *Industrial Trust Title and Saving Co. v. Weakley*, 103 Ala. 458, this court recognized and applied the rule, which requires the holder of a check, receiving it at the same place in which the drawee transacts business to present it for payment, within banking hours, on the day it is received, or the following secular day.

In the case now before us, a check drawn on a bank, at Greenville, Ala., by the appellant, a debtor, was sent by him to the appellees, his creditors, at Philadelphia, Pa., and hence we are required to determine what diligence the appellees ought to have exercised in the collection of the check, which they received and accepted, at a place remote from the location of the bank upon which it was drawn.

Speaking of the duty of a holder of a check, under the circumstances stated, Judge Story says: "Where he receives the check from the drawer in a place distant from the place of payment, it will be sufficient for him to forward it by the post to some person at the latter place on the next secular day after it is received; and the person to whom it is thus forwarded, will not be bound to present it for payment until the day after it has reached him by the course of the post. If the payment is not thus regularly demanded, and the bank or bankers should fail before the check is presented, the loss will be the loss of the holder, who will have made the

check his own by his *laches*."—Story on Promissory
Notes, 493.

A check is intended for payment, not circulation; and
as between the original parties to it, the time allowed
for its presentation will not be enlarged by successive
transfers.

These principles seem to be well established and
to be recognized by the standard text writers.—2
Daniel on Neg. Inst., § 1592; Boone on Banking, 173;
2 Morse on Banks and Banking, § 421; Tiedeman on
Com. Paper, § 443; 3 Randolph on Com. Paper, §
1106; Byles on Bills, § 20; Chitty on Bills, (13th Am.
ed.), p. 436.

Undoubtedly cases may be found, some of which are
cited by council for appellees, where a longer time than
that above stated, was, under exceptional and peculiar
circumstances, allowed for presentation of a check.
Here, no extraordinary or unusual circumstances, call-
ing for a relaxation of the settled rule are presented;
and, hence, the simple and definite requirement, im-
posing the duty of sending the check to a person, bank
or other collecting agency at Greenville for presenta-
tion, without the selection of a circuitous route or the
intervention of intermediate and successive collecting
banks, whereby of necessity the presentation would be
unduly delayed, must be applied.

The appellees having received the check of the appel-
lant on December 12, 1893, at Philadelphia, it was their
duty to forward it to Greenville, Ala., at the latest, on
the following day. This duty they could perform in per-
son, or they might entrust it to a local bank.

The latter course they pursued, by depositing the
check on December 13, 1893, with the Union National
Bank of Philadelphia for collection. This, however, did
not enlarge the time for transmitting the instrument to
the place of payment; and in the collection of the check
the bank acted as the agent of the holders.

In sending the check to Charleston, S. C., whence it
went, first to Montgomery, Ala., and thence to Green-
ville, Ala., the place of payment, whereby presentation
and demand was delayed until December 19, 1893, after
the failure of the drawee bank, there was negligence,
imposing upon the appellees whatever loss the appellant
suffered from the *laches*.—*Gifford v. Hardell*, 88 Wis.

538; s. c. 43 Am. St. Rep. 925; *First National Bank v. Miller*, 37 Neb. 500; s. c. 40 Am. St. Rep. 499. There is nothing in the evidence from which it can be inferred that the method pursued ·was within the contemplation or expectation of the appellant, nor that it was according to any previous course of dealing between the parties, or that he expressly or impliedly assented to the delay. Neither can we judicially know that any custom existed in Philadelphia whereby checks received for collection on Greenville, Ala., were sent by way of Charleston, S. C., for presentation; nor if such a practice prevailed, that it was known to the appellant. If any one of these things, or all combined, would authorize the inference that he assented to the intervening delay, or could justify a holding that he could not complain of a delay—questions we do not now consider—it was incumbent upon the appellees to introduce into the record evidence of the existence of such facts. It is satisfactorily established, by letters incorporated in the bill of exceptions, and from the post marks on the envelopes, admitted to be the true dates on which the letters were mailed at Philadelphia and received at Greenville, that by due course of mail a letter posted at the former place, on December 13, 1893, at any time up to 7:30 o'clock P. M. would have reached the latter point not later than 10 o'clock P. M. on the 15th of the same month, or within forty-eight hours. Thus, the original envelope sent up for our inspection, shows that the letter, enclosing a receipt for the check, mailed at 7:30 o'clock P. M. on December 12 at Philadelphia, arrived at Greenville at 1 o'clock P. M. on December 14th, or in less than two days. Hence, if the check had been forwarded directly to Greenville on December 13th, when it was sent to Charleston, it would, with the diligence the law requires, have been presented to the bank, upon which it was drawn, on Saturday, December 16th, and of consequence prior to the failure on Monday the 18th.

It may be that the appellees, or their local bank, had no correspondent at Greenville, although as to this the evidence does not inform us; or it may not have been convenient to pursue the course the law directs. If such was the case, they could easily have declined to accept the check; they were not bound to receive it; but having done so, and having undertaken its collection,

they must bear all the burdens, and exercise all the diligence imposed by law.

At this point, the appellees invoke the well recognized rule, which declares that the drawer of a check has no cause to complain of its delay in its presentation, if he has thereby suffered no loss or damage; and they contend that the appellant must show affirmatively that he had funds, from which the check would have been paid, in the hands of the drawee, during the period within which by the exercise of due diligence upon the part of the holders, the check would have been presented. The contention is rested upon the fourth paragraph of the agreed statement of facts, which recites merely that the appellant had the amount of the check to his credit with the drawees, at the time of the assignment and failure. As the fact is thus presented, a question is raised as to the burden of proof. In most cases of this kind to be found in the books, there is positive evidence that the drawer had, or had not funds, to meet the check, when drawn, or during the interval before the failure; or that he had or had not withdrawn his funds. In this case, the parties have not advised us by affirmative testimony, or by agreement, as to the state of appellant's accounts with his bankers, anterior to the time of their failure; and, hence the refusal must turn upon legal presumptions, arising out of the facts which are stated in the agreement of the parties, constituting the evidence in the case. The important inquiry is, where rests the burden of proof? Without entering upon any prolonged discussion, it will be sufficient to say that the authorities are quite uniform in holding that checks are presumably drawn upon or against a deposit of funds, and where the drawer establishes negligence or undue delay in the presentation of his check, and the failure of the drawee bank, after the expiration of the period within which, with due diligence, the check would have been presented, the presumption of injury arises, casting upon the holder the burden of proving the drawer has suffered no loss or damage by the delay.—*Stephens v. Park*, 73 Ill. 387; *Willetts v. Payne*, 43 Ill. 433; *Anderson v. Rodgers*, 53 Kas. 542; *Little v. Phenix Bank*, 2 Hill, 427; *Planters Bank v. Merritt*, 7 Heisk. (Tenn.) 177; 2 Morse on Banks and Banking, § 421; Daniel on Neg. Inst., § 1588; Story on Prom. Notes, § 498; Edwards on Bills, p. 398; 3

Randolph on Com. Paper; §`1106, p. 94. As Kent, J., said in *Cruger v. Armstrong*, 3 Johns. Cas. 5 (2 Am. Dec. 126), "the presumption is, that the check would have been paid if diligently presented."

The presumption of loss arising out of want of diligence in the presentation of a check, and the intervening failure of the drawee, may be rebutted by proof that the drawer had no available funds with the drawee to meet the check, or that he withdrew them before the failure. No such proof was produced in this case; on the contrary, it is admitted that the necessary amount, presumably in the bank wherewith to pay the check, remained to the credit of the appellant, with his bankers, when the failure occurred, and it is further admitted that the proprietors of the bank were still insolvent at the time of the trial. In this state of evidence, the appellees failed to meet the burden resting upon them; the presumption of damage to appellant stands unrebutted; and the loss must fall upon the appellees, to whose want of diligence it is attributable.

The suit was brought upon the original debt, in settlement of which the check was given, and the appellant, who was defendant, in the circuit court, interposed the plea of payment. It is contended by the appellees that the defense, arising out of the failure to present the check, whereby loss resulted, is not available under that plea. With this view we do not agree. The correct rule is thus stated by Sterritt, J., in *Kilpatrick v. Home Building & Loan Association*, 119 Pa. St. 30: "It is well settled that, in the absence of an agreement to the contrary, a check or promissory note, of either the debtor or a third person, received for debt, is merely conditional payment, that is, satisfaction of the debt if and when paid; but that acceptance of such note or check implies an undertaking of due diligence in presenting it for payment, &c.; and if the party from whom it is received sustains loss by want of such diligence, it will be held to operate as actual payment."

By failure of appellees to exercise proper diligence in the collection of the check, whereby the appellant, if held upon the original debt, would suffer loss, they made the check their own and turned, what was at first only a conditional payment into an absolute discharge of the debt, for which the check was given.—Boone on Bank

18

and Banking, § 181; *Industrial Trust, Title and Savings Co. v. Weakley,* 103 Ala. 458; *Middlesex v. Thomas,* 20 N. J. Eq. 39; *Kahn v. Walton,* 46 Ohio St. 195.

The plaintiffs were not entitled to recover, and the circuit court erred in giving the affirmative charge in their behalf.

As the facts were agreed upon by the parties, and as no inferences entitling the plaintiff to recover were deducible therefrom, the court might well, upon request, without hypothesis, have directed the jury that upon the agreed evidence the defendant was entitled to a verdict.

Let the judgment be reversed and the cause remanded.

Reversed and remanded.