# PICKETT v. THOMAS J. BAIRD INVESTMENT COMPANY.

(133 N. W. 1026.)

**Banks — collections — sending checks directly to drawee.**

1. It is negligence for a collecting bank to transmit its checks directly to the bank or party by whom payment is to be made, with request that remittances be made therefor; "it being considered that no firm, bank, corporation, or individual can be deemed a suitable agent, in contemplation of law, to enforce, in behalf of another, a claim against itself."

**Banks — sending checks directly to drawee—burden of proof.**

2. In such cases, the burden of proof is upon the transmitting bank to prove that the maker of the check has not suffered injury.

**Banks — sending checks directly to drawee — burden of proof.**

3. *Held,* that, where defendant, a resident of Lakota, in this state, sent to Duluth, Minnesota, a personal check on one of two of his local banks, and such check was deposited by the payee in his bank at Duluth, for collection, it was negligence on the part of such bank to send such check, with a request for remittance, to the drawee bank, and not to the other local bank, or some other agent at Lakota.

It is further *held* that, in a suit by the payee against the maker, because of the dishonor of a draft sent by such drawee bank in payment of such check, on account of the insolvency of the drawee, the defendant could offset his losses occasioned by such negligence, which were presumptively the face of the check; it being shown that the drawee bank continued to pay out money after the receipt of such check from the Duluth bank and the sending of such draft.

Opinion filed December 11, 1911.

---

Note.—The American cases are almost unanimous in support of the doctrine that it is negligence in a bank having a draft or check for collection to send it directly to the drawee, as shown by the authorities on the question which are collated in notes in 27 L.R.A. 248; 2 L.R.A.(N.S.) 194, and 18 L.R.A.(N.S.) 441. And it is generally held that the fact that it is the custom to send checks or drafts directly to the drawee bank where there is no other bank in good standing at the place of payment does not justify that course. It has been held in New York, however, that the drawee bank may be constituted an agent for the collection of the obligation. McIntosh v. Tyler, 47 Hun, 99. The court in this case relied on Indig v. National City Bank, 80 N. Y. 100; Briggs v. Central Nat. Bank, 89 N. Y. 182, 42 Am. Rep. 285, neither of which cases decided that exact question. It therefore appears that even in New York there is no direct decision of a court of last resort upholding the practice of mailing checks directly to the drawee, and the effect of the decision in the case of McIntosh v. Tyler is weakened by the fact that it is based on cases which do not exactly support it.

Appeal from District court, Nelson county; *Templeton, J.*

Action by W. N. Pickett against the Thomas J. Baird Inves.ment Company. From a judgment for defendant, plaintiff appeals.

Affirmed.

Facts: Defendant, the Thomas J. Baird Investment Company, which was located at Lakota, North Dakota, was authorized by plaintiff to collect $480 from one Radcliffe, at Larimore, and to transmit the same to plaintiff at Duluth. Radcliffe sent to the defendant, at Lakota, his personal check on a Larimore bank for the sum of $480, and defendant indorsed this check and deposited it to its own account and credit in the People's State Bank at Lakota. This check was soon after, and on January 14th, collected by the People's State Bank from the Larimore bank, and about two weeks after the receipt of the Radcliffe check defendant sent its own check on the People's State Bank of Lakota to the plaintiff at Duluth. The check was in the ordinary form, but in addition contained the words "payable if desired in New York, Chicago, or Minneapolis exchange at par." It was received by the plaintiff at Duluth on January 17, 1910, and on January 19th plaintiff deposited it to his own account in the First National Bank of Duluth. It was, on January 19, 1910, indorsed by the Duluth bank: "Pay to the order of any bank, banker, or trust company. Jan. 19, 1910,"—and sent by such bank to the People's Bank of Lakota for collection. There is no testimony in the record as to exactly when it was sent, but the proof is positive that it was received by the People's Bank of Lakota on or before January 21st, on which day it was honored by the People's State Bank of Lakota, and a draft in payment thereof was sent by the said bank to the First National Bank of Duluth, drawn on the Security National Bank of Minneapolis. This draft was then sent to Minneapolis by the Duluth bank for collection, and presented for payment to the Minneapolis bank on January 25th. Payment was refused for lack of funds to the credit of the People's State Bank of Lakota, and the original check was charged back to the account of the plaintiff, Pickett, by the Duluth bank, and plaintiff brought this action against the defendant, the Baird Investment Company, to recover the $480 involved.

The evidence further showed that the People's State Bank of Lakota

had been insolvent for six months previous to the issuance of the draft,, and that it was closed by the bank examiner on January 27th, and six days after its issuance, and that "general depositors will receive little,. if anything, in the way of dividends or otherwise from the said bank."' It, however, did not appear in any way whether there were ever any funds deposited with the Minneapolis bank, or, if so, when those funds were exhausted; and it shows that the People's State Bank of Lakota remained open until January 27th, and, up to the close of business on January 26th, "was engaged in the transaction of its business and received deposits and made payments;" that, until closed on January 27th, it "was of general repute in the community, and the fact of its. insolvency was concealed from and was unknown to the general public and to the defendant;" and "that during all of the times mentioned in the pleadings the defendant had on deposit and subject to check in said bank moneys more than sufficient to pay the check in question."' The testimony also showed that there was another local bank, the National Bank of Lakota, to which the check might have been sent. It. did not show, however, whether the People's State Bank of Lakota was, a regular correspondent of the Duluth bank or not.   There was some evidence tending to show that it was customary for the People's Bank to get checks from its correspondents and other banks, such as the one in controversy, sent direct to it for collection, and not through the agency of the other bank; and that it was customary for such bank to transmit the money therefor in the form of drafts.   This evidence, however, rather proved the custom to be one of the People's State Bank than a general custom among bankers in the Northwest.   In fact, it did not go far enough to prove this last point.   The testimony also, showed that when the People's State Bank received checks drawn on itself for collection from foreign banks, it was its custom to pay for such in drafts; but that when presented for payment by the other local bank, to pay such in "cash, or its equivalent."

The trial court found that the "plaintiff was negligent in causing the check in controversy to be forwarded for collection direct to the drawee thereof, and in accepting said draft in payment therefor; and that the defendant had been damaged by such negligence in the full sum of the face of the said check."   In accordance with this finding, he dis-

missed the action, with costs against, but without prejudice to, the plaintiff. From this judgment, the plaintiff appeals to this court.

*Frich & Kelly,* for appellant.
*Scott Rex,* for respondent.

BRUCE, J. (after stating the facts as above). Two questions are before us for discussion: (1) Was appellant negligent in depositing and transmitting the check received from the Baird Investment Company; and (2), if negligent, was respondent damaged by such negligence, so as to be discharged from liability? Section 6488, Rev. Codes 1905, requires that a check be presented for payment within a "reasonable time" after its issue, and declares that if not so presented the "drawer will be discharged from liability thereon to the extent of the loss occasioned by the delay." On this subject of presentment, Bolles, in his work on Banking (vol. 2, p. 603), says: "As a check is not intended to circulate like money it should be promptly presented for payment. Indeed, the holder must observe very definite rules in presenting it; for if he does not his rights against the drawer may be impaired. First, when the holder and drawee live in the same place, a check must be presented on the same day or on the next after receiving it. Second, when they live in different places, the holder must send it forward, in a reasonably direct way, on the same day or the next, for presentation. Third, when there is a clearing house in the place of the drawer, a day longer may be given for collection through the medium of this institution. Fourth, on some occasions, for example, when the holder knows that the bank's failure is impending, he must make an immediate presentation, if possible, to prevent the drawer from loss. This rule is with less urgent reason denied. Fifth, when the last day for making direct presentation, or sending it away for this purpose, falls due on Sunday, the check is payable the following day." These statements are, no doubt, borne out in the main by the authorities. In order that negligence in presentment, however, shall preclude a recovery, it is necessary to prove that the defendant was injured thereby, and it is only the loss occasioned by the delay which can be used in avoidance of the original liability. Since, in the case at bar, the check was presented for payment before the suspension of the bank, and while it

was still "enjoying a general good repute and paying out money," there is nothing in the evidence to show that the defendant was injured by this negligent delay, and the question of delay in the presentment of the check is, as far as this suit is concerned, immaterial.

But this is only part of the negligence claimed by the respondent to have been committed by the plaintiff. Its chief ground of complaint is that the plaintiff, Pickett, gave the check to the First National Bank of Duluth for collection, and that that bank acting as the agent of plaintiff, instead of sending the same to the other local bank, the National Bank of Lakota, for collection in cash, sent it to the drawee of the check, the People's State Bank. There can be no question as to the strength and conclusiveness of this contention. The law is well settled that a collecting bank "must not transmit its checks or bills directly to the bank or party by whom payment is to be made, with the request that remittances be made therefor. It is considered that no firm, bank, corporation, or individual can be deemed a suitable agent, in contemplation of law, to enforce, in behalf of another, a claim against itself." See Dan. Neg. Inst. §§ 328a, 1599; National Bank v. Johnson, 6 N. D. 180, 69 N. W. 49; Drovers' Nat. Bank v. Anglo-American Packing & Provision Co. 117 Ill. 100, 57 Am. Rep. 855, 7 N. E. 601; 5 Cyc. 506; German Nat. Bank v. Burns, 12 Colo. 539, 13 Am. St. Rep. 247, 21 Pac. 714; Western Wheeled Scraper Co. v. Sadilek, 50 Neb. 105, 61 Am. St. Rep. 550, 69 N. W. 765; Pinkney v. Kanawha Valley Bank, 68 W. Va. 254, 32 L.R.A.(N.S.) 987, 69 S. E. 1012, Ann. Cas. 1912 B. 115; Anderson v. Rodgers, 27 L.R.A. 248, and note (53 Kan. 542, 36 Pac. 1067); Bank of Rocky Mount v. Floyd, 142 N. C. 187, 55 S. E. 95; Winchester Mill. Co. v. Bank of Winchester, 18 L.R.A.(N.S.) 441, and note (120 Tenn. 225, 111 S. W. 248); Minneapolis Sash & Door Co. v. Metropolitan Bank, 76 Minn. 136, 44 L.R.A. 504, 77 Am. St. Rep. 609, 78 N. W. 980; First Nat. Bank v. Citizens' Sav. Bank, 123 Mich. 336, 48 L.R.A. 583, 82 N. W. 66; R. H. Herron Co. v. Mawby, 5 Cal. App. 39, 89 Pac. 872; Givan v. Bank of Alexander, — Tenn. —, 47 L.R.A. 270, 52 S. W. 923; Bedell v. Herbine Bank, 62 Neb. 339, 86 N. W. 1060; Jefferson County Bank v. Hendrix, 147 Ala. 670, 1 L.R.A.(N.S.) 246, 39 So. 295; Farley Nat. Bank v. Pollock & Bernheimer, 145 Ala. 321, 2 L.R.A.(N.S.) 194, 117 Am. St. Rep. 44, 39 So. 612, 8 Ann. Cas.

370; Inter-state Nat. Bank v. Ringo, 72 Kan. 116, 3 L.R.A.(N.S.) 1179, 115 Am. St. Rep. 176, 83 Pac. 119; American Exch. Bank v. Metropolitan Nat. Bank, 71 Mo. App. 451. Nor can there be any question that the Duluth bank was the agent of the plaintiff, Pickett, and that the negligence of this bank would be attributed to its principal. National Bank v. Johnson, 6 N. D. 180, 69 N. W. 49; Interstate Nat. Bank v. Ringo, 72 Kan. 116, 3 L.R.A.(N.S.) 1179, 115 Am. St. Rep. 176, 83 Pac. 119.

The only possible contention that appellant can put forward is that there is nothing to show that if the check had been sent to the other bank in Lakota for collection and presented for payment that payment would have been made in cash. On this question, however, the burden of proof is under the authorities, upon the party guilty of the primary negligence to negative the presumption of injury, and where due presentment is not made the burden of proof is upon the holder of the check to show that the drawer has not suffered injury.

"In this case," says the supreme court of Kansas, in Anderson v. Rodgers, 53 Kan. 542, 27 L.R.A. 248, 36 Pac. 1067, "the check seems to have been forwarded for payment in due time, but it was sent directly to the drawee by mail, with the request that the bank of Richfield remit the amount by mail in exchange in Kansas City. The Hamilton County Bank therefore selected the drawee of the check as its agent for collection. That this was negligence is well settled by the authorities. It is said, in 1 Daniels on Negotiable Instruments, § 328a: 'For the purposes of collection, the collecting bank must employ a suitable subagent. It must not transmit its checks or bills directly to the bank or party by whom payment is to be made, with the request that remittances be made therefor. It is considered that no firm, bank, corporation, or individual can be deemed a suitable agent, in contemplation of law, to enforce, in behalf of an other, a claim against itself.' This proposition is sustained by abundant authorities. Drovers' Nat. Bank v. Anglo-American Packing & Provision Co. 117 Ill. 100, 57 Am. Rep. 855, 7 N. E. 601; German Nat. Bank v. Burns, 12 Colo. 539, 13 Am. St. Rep. 247, 21 Pac. 714; Merchants' Nat. Bank v. Goodman, 109 Pa. 422, 58 Am. Rep. 728, 2 Atl. 687; First Nat. Bank v. Fourth Nat. Bank, 6 C. C. A. 183, 16 U. S. App. 1, 56 Fed. 967; Farwell v. Curtis, 7 Biss. 160, Fed. Cas. No. 4,690.

"It is insisted that, inasmuch as the check was forwarded in due time, and came into the hands of the drawee, which refused payment and returned the check with the statement, 'No funds in bank,' the defendant was not injured by the mode of presentment; that an answer of 'no funds,' sent by mail, is as effectual a refusal to pay as though made across the counter at the bank. Where due presentment is not made, the burden of proof is upon the holder of the check to show that the drawer has not suffered injury. Little v. Phenix Bank, 2 Hill, 425; Ford v. McClung, 5 W. Va. 166; 2 Parsons, Bills & Notes, 71; 2 Dan. Neg. Inst. § 1588; Daniels v. Kyle, 1 Ga. 304. From the agreed statement, it appears that the check reached Richfield on the 12th of December, 1889, after business hours; that the bank on which it was drawn was open, doing a general business, receiving deposits, and paying money on checks during its regular banking hours on the 13th. During that day a letter was written, addressed to the Hamilton County Bank, within which was inclosed the check and the statement, 'no funds in bank.' This letter was deposited in the postoffice after banking hours, and received at Syracuse after business hours on the 14th. . . . Can it be presumed that if the check had been regularly presented over the counter to the Richfield bank, on the 13th, a false answer would have been given, as was in fact given by letter, and payment refused? It is admitted that the defendant had more than money enough to his credit to meet the check. Had presentment been made by another agent of the plaintiff, and payment refused, steps might have been taken immediately to protect the drawer's rights; but, the check being in the hands of the drawee, of course, no effort would be made by it to prosecute itself, and the fact that payment was refused was not communicated to the Hamilton County Bank until the night of the day following the last one on which the Richfield bank was open for business. It might be that the answer, 'No funds in bank,' was literally true, and that the Richfield bank had not the money with which to make payment at any time during the day of the 13th; but we are not at liberty to indulge in any presumption of that kind, the agreed facts showing that it received deposits and paid checks during the whole of that business day. This case must be decided in accordance with established principles; and the fact that the Richfield bank was a small concern in a very sparsely peopled part of the state, and, perhaps,

never had any large amount of funds in its possession, cannot be made a pretext for breaking down those wholesome rules of business which have been built up and defined with so much care and precision. The request in this case by letter was not an ordinary demand of payment, calling for current funds, but was a request for Kansas City exchange, which the drawee would, of course, be at perfect liberty to refuse. In cases of this kind, a hardship necessarily results to one party or another. Courts, in their decisions, must be guided by fixed rules. The plaintiff, having trusted in the good faith of the Richfield bank by sending the check to it, must bear the burden of the loss occasioned by its failure, occurring after the day on which regular presentment should have been made."

This case discusses nearly all of the questions involved on this appeal, and is abundantly supported by authority. See Anderson v. Rodgers, 53 Kan. 542, 27 L.R.A. 248, 36 Pac. 1067; Little v. Phenix Bank, 2 Hill, 425; Ford v. McClung, 5 W. Va. 166; Daniels v. Kyle, 1 Ga. 304; Hamlin v. Simpson, 105 Iowa, 125, 44 L.R.A. 397, 74 N. W. 906; Watt v. Gans & Co. 114 Ala. 264, 62 Am. St. Rep. 99, 21 So. 1011. It is true that some cases, such as First Nat. Bank v. City Nat. Bank, 12 Tex. Civ. App. 318, 34 S. W. 458, seem generally to hold that the rule does not apply where the drawee bank was insolvent; but in these cases, unlike the case at bar, there appears to have been no evidence that, though technically insolvent, the bank was continuing to pay out money, and was of general good repute.

Nor do we believe that any usage or custom among the banks, even if proved, would, as far as the respondent, the Baird Investment Company, is concerned, change the rule. The Baird Investment Company certainly had the right to rely upon the general rule of law, at any rate, without proof of a knowledge by it of the custom, and an express or implied consent thereto. Minneapolis Sash & Door Co. v. Metropolitan Bank, 76 Minn. 136, 44 L.R.A. 504, 77 Am. St. Rep. 609, 78 N. W. 980; American Exch. Nat. Bank v. Metropolitan Nat. Bank, 71 Mo. App. 451. The authorities just cited, indeed, even go so far as to hold that any such custom would be unreasonable and void, and such is undoubtedly the general rule. All authorities agree that, in order that such a custom may be pleaded and taken advantage of, it must be proved to have been a custom which was general and well

known, or consented to by the drawer of the check; and there is no proof whatever of such a custom or consent in the record before us. The only evidence upon the point is to be found in the testimony of Mr. Drake, the cashier of the other, the National Bank of Lakota; and he testified that he spoke solely from his own experience "as cashier of the National Bank here in Lakota, and that he never had any experience in any other bank; that it was a frequent occurrence for *his* bank to receive checks that were drawn on it, sent to it direct by the terminal bank, but that, except in the case of correspondent banks, such collections were usually sent for collection to other banks than the drawee; or, at any rate, all items in a town were sent to some one bank in that town, regardless of whom they were drawn on. There is, in this testimony, no proof of a custom which would bind the respondent.

The judgment of the District Court is affirmed.