STATE OF NORTH DAKOTA, Respondent, v. BISMARCK BANK, a Corporation (L. R. Baird, Receiver Thereof), and the State of North Dakota, Doing Business as the Bank of North Dakota, Defendants. THE STATE OF NORTH DAKOTA Doing Business as The Bank of North Dakota, Appellant.

(220 N. W. 636.)

Opinion filed July 23, 1928.

*O'Hare & Cox,* for appellant.

Nuessle, Ch. J. The plaintiff, the state of North Dakota, seeks in this action to recover of the defendants the amount of a check received from the Workmen's Compensation Bureau for collection in the usual course of banking business.

The facts are stipulated. So far as material, they are as follows: On May 23d, 1923, one Lovejoy mailed to the Workmen's Compensation Bureau his check for $1,154.02 in payment of his premium to the workmen's compensation fund. This check was drawn on the Williams County State Bank of Williston, North Dakota. Lovejoy was a depositor in this bank and at the time he drew the check and thereafter until the bank closed on June 12th, he had a deposit credit in the bank sufficient to cover the check. On May 28th the Workmen's Compensation Bureau deposited this check for collection in the Bismarck Bank of Bismarck, North Dakota. On May 29 the Bismarck Bank deposited the check in the Bank of North Dakota. On May 31st, the first business day thereafter, the Bank of North Dakota transmitted the check for collection and remittance to the drawee bank at Williston. No returns were had upon the check. So on the seventh day thereafter, the time required in the usual course of mail for returns to be made, the Bank of North Dakota, following the usual custom, sent a tracer

after the check. On the 12th of June the Williams County State Bank closed. The Bank of North Dakota at once advised the Bismarck Bank that no returns had been made on the check and that the drawee bank had closed. On June 19th the authorities in charge of the closed Williams County State Bank returned the check to the Bank of North Dakota. The Bank of North Dakota charged the amount thereof back against the Bismarck Bank and returned the check to the Bismarck Bank. The Bismarck Bank did likewise with the Workmen's Compensation Bureau. In 1921, the Bank of North Dakota for its own protection addressed a notice to all its depositing banks stating the terms under which it would accept checks and drafts for collection. This notice read:

"To all Customers, Patrons and Persons dealing with or through The Bank of North Dakota, Bismarck, North Dakota:

"The Bank of North Dakota accepts items other than cash from you and handles them for you only upon the following conditions:

"All items for deposit other than cash, are accepted and credited for collection only and may be deferred or charged back until the cash therefor shall have been actually received by this Bank.

"The Bank of North Dakota reserves the right to refuse payment on your checks when drawn against deposits consisting of items other than cash for which credit has been given but for which the cash has not been received. All items will be sent out or presented for collection or payment in the customary manner or in any other manner the Bank may select.

"The Bank of North Dakota reserves the right to select any agent or sub-agent, who in turn may select agents and sub-agents to handle such items *or such items may be forwarded direct.*

"The Bank of North Dakota does not undertake any responsibility or assume any liability for items out for collection, credit or payment after they have left The Bank of North Dakota until the cash has been received therefor.

"If any item is dishonored or lost, or the money due thereon is lost by reason of the acts or omissions, misappropriations or conversions, negligences or defaults of any agent or sub-agent, The Bank of North Dakota will not be responsible therefor.

"Where any item has been charged back, the dishonored item, or

any paper returned to the Bank in lieu thereof will, if it can be obtained and if it can be legally done, be turned over to the owner in lieu of the original item.

"The Bank of North Dakota assumes responsibility only for such moneys as actually come into its hands.

"There are inclosed herewith two copies. Please acknowledge receipt of one and return."

The Bismarck Bank received this notice in duplicate and to evidence such receipt endorsed an acknowledgment thereof upon one of the notices and returned the same to the Bank of North Dakota. Thereafter all business done between the banks was done pursuant to the terms of the notice, and such was the manner of the conduct of this business at the time of the deposit of the check here in question in the Bank of North Dakota on May 29th, 1923.

On this state of facts the plaintiff predicates its case. There is no contention that there was any negligence on the part of the defendant Bank of North Dakota, unless it be that it constituted negligence on its part to send the check for collection directly to the drawee bank. The cause was tried to the court without a jury and the court made findings of fact and conclusions of law favorable to the plaintiff and ordered judgment accordingly against the Bank of North Dakota. Judgment was entered pursuant to the order and the Bank of North Dakota appeals.

It was the theory of the trial court that the so-called Massachusetts rule respecting the duties and obligations of collecting banks is in force in this jurisdiction; that thus there was privity between the Workmen's Compensation Bureau as a depositor and the defendant as a collecting bank; that the transmission of the check to the drawee bank constituted negligence; that any contract the defendant bank may have attempted to make whereby it should be permitted to transmit checks received by it for collection to the drawee bank was contrary to public policy and void; and that, therefore, on account of the manner in which it handled the item in question the defendant Bank of North Dakota was guilty of negligence, for which the plaintiff was entitled to recover as against it.

This court in the case of Pickett v. Thomas J. Baird Invest. Co. 22 N. D. 343, 133 N. W. 1026, 2 N. C. C. A. 722, held it to be negligence on the part of a bank having a check for collection to transmit it direct-

ly to the bank by whom payment was to be made, with request that remittance be made therefor. And this seems to be the general rule in the absence of special contract. See note in 22 N. D. 343; Federal Reserve Bank v. Malloy, 264 U. S. 160, 68 L. ed. 617, 31 A.L.R. 1261, 44 Sup. Ct. Rep. 296. But a collecting bank, since it is under no obligation to undertake a collection, may impose any contractual condition that it sees fit with respect to the manner and means by which a collection which it does undertake shall be made. Farmers State Bank v. Union Nat. Bank, 42 N. D. 449, 173 N. W. 789, and authorities cited; Fergus County v. Federal Reserve Bank, 75 Mont. 582, 244 Pac. 883. This being so, it is wholly immaterial in the instant suit as to whether the New York rule or the Massachusetts rule controls in this jurisdiction. These rules are merely general rules and apply only in so far as there is no contractual stipulation of the parties over-riding them. Here the parties by their contract stipulated that the defendant, Bank of North Dakota, might, if it saw fit, forward such items as it should receive for collection direct.

There is no ground for the contention that this practice is contrary to any rule of public policy. Certainly it is not forbidden by any statute. On the contrary, the legislature in 1925 (Sess. Laws 1925, chap. 170) enacted a statute of the opposite import, as did also the legislature of 1927 (Sess. Laws 1927, chap. 92). It is true the transaction involved in this suit took place in 1923 prior to these enactments. But this court in 1919 had recognized the right of the parties to such a transaction to contract with respect to the manner in which the collection might be made. See Farmers State Bank v. Union Nat. Bank, supra.

The judgment of the district court must be reversed and the action dismissed. It is so ordered.

Burr, Burke, Birdzell, and Christianson, JJ., concur.